FILED IN
5TH COURT OF APPEALS

2015 APR 24 PM 4: 00

LISA MATZ, CLERK

CAUSE NO. 05-14-01510-CV

IN THE
FIFTH COURT OF APPEALS
DALLAS, TEXAS

TRENT S. GRIFFIN
Appellant,

v.

AMERICAN ZURICH INSURANCE COMPANY
Appellee.

On appeal from the
101st District Court of
Dallas County, Texas

APPELLANT'S BRIEF

Trent S. Griffin, Sr.
724 Meandering Dr.
Cedar Hill, Texas 75104
Tel. 469-337-0598

TRENT S. GRIFFIN, SR., PRO SE
APPELLANT

CAUSE NO. 05-14-01510-CV

TRENT S. GRIFFIN, SR.
Appellant,

v.

American Zurich Insurance Company,
Appellee.

## I. IDENTITY OF PARTIES AND COUNSEL

1. Trent S. Griffin, Appellant, Pro se
   724 Meandering Drive
   Cedar Hill, Texas 75104
   Tel. 469-337-0598
2. American Zurich Insurance Company, Appellee
   Corporation Service Company
   211 East 7th Street, # 620
   Austin, Texas 78701-3218
3. THE SILVERA FIRM
   Attorney Todd Richards, Appellee's Counsel
   1015 Providence Towers East
   5001 Spring Valley Road
   Dallas, Texas 75244
   Tel. 972-715-1750
   Fax 972-715-1759
   DSILVERA@SILVERALAW.COM

## II. TABLE OF CONTENTS

**Page**

I.    Identity of Parties and Counsel.................................................i

II.   Table of Contents........................................................................ii

III.  Index and Authorities................................................................iv

IV.  Statement of Case.......................................................................1

V.   Statement Regarding Oral Argument.........................................2

VI.  Issues Presented..........................................................................3

VII. Statement of Facts......................................................................4

VIII. Summary of Argument.................................................................9

IX.  Argument....................................................................................10

    A.   A "no evidence" partial summary judgment was granted without notice of hearing or submission date of a summary judgment motion by the court or appellee............................10

    B.   A "no evidence" partial summary judgment was granted prematurely before close of discovery pursuant Rule 190.3 (level 2) ordered by Judge Martin Lowy.................................10

    C.   A traditional summary judgment was granted without notice of the hearing or submission date of a summary judgment motion by the court or appelle..............................10

    D.   A traditional summary judgment was granted prematurely before the close of discovery pursuant Rule 190.3 (level 2) ordered by Judge Martin Lowy............................................15

    E.   Appellant was deprived of any right to seek leave to file affidavits or other written response.......................................10

F.  Trial court abused its discretion failing to draw every possible inference favorable for appellant on its merits of the claims and try each issue of fact and law in the manner that applies to other civil suits before granting summary judgment.........10

G.  Appelle failed to conclusively negate all elements of the appellant's claims to raise a genuine issue of material fact as a matter of law...............................................................10

H.  Trial court erred in granting summary judgment, by allowing appellee to file into record inadmissable evidence, ie. expert testimony, peer review and state action or nature of that action................................................15

I.  Trial court abuse its discretion, failing to follow Texas Labor Codes and Government Codes..................................................15

J.  Trial court abused its discretion granting a "no evidence" partial summary judgment and summary judgment without finding of facts and conclusion of law....................................15

X.  Prayer.................................................................................19

XI.  Appendix.....attached.................................................................21

iii

# III. INDEX AND AUTHORITIES

**Page**

**Cases**

*Allen v. A & T Transp. Co. Inc.,* 79 S.W.3d 65, 68
(Tex. App.---Texarkana 2002, pet. denied).....................................13

*Alexander v. Lockheed Martin Corporation,* 188 S.W.3d 348

(Tex. App.---Forth Worth 2006, pet. denied)...............................12

*Bado Equipment Co., Inc. v. Ryder Truck Lines,* 612 S.W.2d
81, 83 (Civ. App.---Houston [14th Dist.] 1981, n.r.e.)....................14

*Barraza v. Eureka Co.,* 25 S.W.3d 225, 231
(Tex. App.---El Paso 2003, no pet.)................................................11

*Continental Casualty Insurance Insurance Company v.
Williamson,* 971 S.W.2d 108 (Tex. App.---Tyler 1998, no pet.)......12

*Dewoody v. Rippley,* 951 S.W.2d 935, 943-944
(Tex. App.---Forth Worth 1997, dis. agr.).......................................14

*Dickson v. State Farm Lloyds,* 944 S.W.2d 666, 667
(Tex. App.---Corpus Christi 1997, no writ).....................................14

*Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex. 1987)....................15

*Guevara v. Ferrer,* 247 S.W.3d 662 (2007)................................15,16

*Harrill v. A.J.'s Wrecker Service, Inc.,* 27 S.W.3d 191, 193-194
(Tex. App.---Dallas 2000, pet. dism'd w.o.j.)................................11

*Hildago v. Surety Savings and Loan Association,* 462 S.W.2d
540, 543 n.1 (Tex. 1971)...........................................................14

*In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex. 1998).........15

*Japole v. Touchy,* 673 S.W.2d 569, 573 (Tex. 1984).....................15

*Jeter v. McGraw,* 79 S.W.3d 211, 214
(Tex. App.---Beaumont 2002, pet. denied)................................11,13

iv

*Krueger v. Atascosa County,* 155 S.W.3d 614
(Tex. App.---San Antonio 2004, no pet.)......................................12

*Lopez v . Zenith Insurance Company,* 229 S.W.3d 775
(Tex. App.---Eastland 2007, pet. denied......................................12

*MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986)......................11

*Martin v. Martin, Martin & Richards, Inc.,* 989 S.W.2d 357, 359
(Tex. 1998)...............................................................................13

*May v. Nacogdoches Memorial Hosp.,* 61 S.W.3d 623, 626-627
(Tex. App.---Tyler 2002, no pet.................................................13

*McGilliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986)..........15

*Nowak`v. DAS Inv. Corp.,* 110 S.W.3d 677, 680
(Tex. App. [14th Dist.] 2003, no pet.).........................................11

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548
(Tex. 1985)...............................................................................11

*Okoli v. Texas Dept. of Human Services,* 117 S.W.3d 477, 479
(Tex. App.---Texarkana 2003, no pet.).........................................13

*Rios v. Texas Bank,* 948 S.W.2d 30, 32-33, n.4
(Tex. App.---Houston [14th Dist.] 1997, no writ).........................13

*Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911
(Tex. 1997)...............................................................................13

*Smithkline Beecham Corp. v. Doe,* 903 S.W.2d 347, 355
(Tex 1995)................................................................................14

*The Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122
(Tex. 1996)...............................................................................17

*Tom L. Scott, Inc. v. McIlhany,* 798 S.W.2d 556, 559
(Tex. 1990)...............................................................................15

*Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 338
(Tex. 1998)...............................................................................15

*Walker v. Packer,* 827 S.W.2d 833, 842 (Tex. 1992)....................15

*William v. Glash,* 789 S.W.2d 261, 264 (Tex. 1990).....................11

*Zurich American Insurance Company v. Gill,* 173 S.W.3d 878
(Tex. App.---Forth Worth 2005, pet. denied)..............................12


**Appeals Panel Decisions**

APPEAL NO. 94224.................................................................12,18

APPEALS NO. 002920...........................................................12,18

APPEALS NO. 020375...............................................................12

APPEALS NO. 032608...............................................................16

APPEALS NO. 032668...............................................................17

APPEALS NO.051656..........................................................unused

APPEALS NO. 080730......................................................12,17,18

APPEALS NO. 111710............................................................18,19

APPEALS NO. 120253......................................................15,16,18

APPEALS NO. 120383...........................................................16,18

APPEALS NO. 130808...............................................................18


**Statutes**

GOV'T CODE 2001.173 *et seq.*...........................................10,14

TEX. ADMIN. CODE 124.1(a)......................................................12

TEX. ADMIN. CODE 124.3(a)(1), (a)(2),(c)(2).............................12

TEX. LAB. CODE 401.0O1 *et esq.*......................................10-19

TEX. LAB. CODE 408.001 *et seq.*.......................................10-19

TEX. LAB. CODE 409.001 *et seq*...................................................12,17,18

TEX. LAB. CODE 410.002 *et seq.* ...............................................10-19

**Rules**

TEX. R. CIV. P. 21a.................................................................12,13

TEX. R. CIV. P. 145................................................................5

TEX. R. CIV. P. 166a..............................................................10,

TEX. R. CIV. P. 166a(c)............................................................10,11,14

TEX. R. CIV. P. 166a(g)...........................................................13

TEX. R. CIV. P. 166a(i)............................................................10,

TEX. R. CIV. P. 185...............................................................14

## IV. STATEMENT OF CASE

Appellant, Trent S. Griffin, pro se files this appellant's brief for a decision and final judgment of the trial court. The case explicitly involved a Trial De Novo Review of a work injury sustained by the appellant and the decision of the Texas Department of Insurance, Division of Workers' Compensation, hereafter referred to in this appellant's brief as the "Agency" and, American Zurich Insurance Company, Appellee. Appellant sought trial de novo review of the decision. Appellant initially filed his suit against American Zurich Insurance Company and the "Agency." Ergo, the trial court dismissed the claim against the agency for lack of subject-matter jurisdiction or plea to jurisdiction. Moreover, appellant's claims sought for extent of injury which included a 5mm left paramedian protrusion (herniated disc), cervical radiculitis/radiculopathy and not at maximum medical improvement. Appellee American Zurich Insurance Company filed a general denial, disputing the extent of injury and denied all alleged facts. Moreover, the insurance carrier presented a defense comprised of the agency's process and decision, with the affirmed decision of the Appeals Panel that failed to act on a decision and order of the agency when the Appellee waived its rights to contest compensability of work injury that was accepted as compensable. This was presented to the Appeals Panel. The trial court disposed of the Appellant's claims by a "no evidence " partial summary judgment and traditional summary judgment. Trial court abused its discretion in its decision by failing to be a finder of fact and conclusion of law, as a matter of law based on the merits of the case and

1

other civil cases similar in nature and operative facts. Trial court abused its discretion by failing to draw all inferences in favor of the appellant before granting summary judgment. Appellee failed to negate all elements of the appellant's claims. Additionally, the trial court allowed inadmissable evidence and testimony presented in the agency's decision, ergo abusing its discretion. Furthermore, trial court abused its discretion by not following the Texas Labor Codes and laws , and Government Codes in review of the erroneous decision by the agency. Moreover, trial court deprived the appellant Trent S. Griffin of any opportunity to present summary judgment evidence, affidavits or response to the movants "no evidence" summary judgment. Upon receipt of a decision against the Appellant, immediately a request for finding of fact and conclusion of law was presented to the trial court. Following the request, Appellant submitted a motion for new trial and an affidavit and any defects were not deliberate or intentional, but that of inadvertance, mistake or mischance.

## V. STATEMENT REGARDING ORAL ARGUMENT

Appellant states it is not necessary for any oral  arguments. This case is not a difficult case to decide based on the Texas Labor Codes and laws, the timing and proximate cause of the injury, the facts that are alleged in the appellant's brief and clerks records. If the Court find it necessary for the appellant to appear for oral argument to explain or present oral argument, the Appellant is more than willing and able. The Clerk's record and this brief is sufficient in application of finding of facts and

2

conclusion of law to satisfy judgment in favor of the appellant.

## VI. ISSUES PRESENTED

Appellant presents the following issues associated with this case. This case involved liability and compensability issues which include, timely contest by Insurance Carrier(IC), Date of Injury (DOI), compensability/ injury (existence), and Extent of Injury (EOI), Income Benefit (IB), Medical Benefits (MB), Procedural, Spinal, Wage, Maximum Medical Improvement (MMI), and Impairment Rating (IR) Issues . The trial court abused its discretion from the initial filing of the complaint. The appellant filed an affidavit and complaint simultaneously allowing for service of process to the Appellee and agency in accordance with Texas Rules of Civil Procedures. The Agency appeared and Appellee was a no show, as it were in the Benefit Review Conference. The Appellee failed to present an affirmative defense against all elements of the appellant's claims. The trial court erred by not enforcing or allowing for a signed uniform scheduling order for mediation. Additonally, trial court abused its discretion favorable to the Appellee in discovery, and not allowing an opportunity for discovery for the Appellant. Trial court abused its discretion by allowing inadmissable evidence, ie. peer review, without a request from Agency for newly discovered evidence that was presented after waiving its rights to contest a compensable injury and expert testimony. Additionally, the trial court erroneously granted a "no evidence" partial summary judgment and summary judgment in favor of the appellee without drawing every inference favorable for the Appellant.

3

Further, the Appellee and the trial court failed to notice the Appellant of a notice of hearing date or notice of submission for summary judgment hearing date. Furthermore, the granting of the "no evidence" partial summary judgment and summary judgment deprived the Appellant of any rights to submit affidavits or a response to present a genuine issue of material fact or present summary judgment evidence. Moreover, the trial court erred by not following the Texas Labor Codes and laws, and Government Code in a [t]rial de novo review. Trial court abused its discretion, failing to draw inferences for finding of facts and conclusion of law in favor of the non-movant. The Appellant's complaint and all alleged facts were to be considered as true, but the trial court erred by granting a "no evidence " partial summary judgment and summary judgment that failed to negate all the elements of each of the Appellant's claims. Appellee has avoided liablility of the Appellant's injury for nearly three(3) years, since the late filing of the notice of refused/disputed claim by the insurance carrier, American Zurich Insurance Company.

## VII. STATEMENT OF FACTS

On May 29th, 2013 Appellant filed his original petition simultaneously submitting an affidavit of indigency [CR 5-14,18-20]. This affidavit was submitted due to the inability to pay. A letter was received contesting the inability to pay, noting the Appellant will be notified of a hearing date [CR 21]. On June 28, 2013 , clearly more than twenty days, the Agency filed an affirmative defense plea of jurisdiction for sovereign

4

immunity. On July 22, 2013, a plea to jurisdiction was filed by the Agency and a hearing date for submission was set for July 26th, 2013 [CR 28]. An order was singed on July 26th, 2015 granting the agency plea of jurisdiction and dismissing the appellant's case against the agency [CR 30]. Ergo, the Appellant was not afforded an opportunity to present any material facts or genuine issues because the appellant was informed there was no need to wait until this afternoon. Judge Martin Lowy intended to rule against the Appellant [RR 1-6]. Moreover, Appellee was a no show, and Judge Martin Lowy informed Appellant, "there was improper service upon the Appellee "[RR 4]. Inherently, when an affidavit is filed, the clerk must docket the action, issue citation and provide such other customary services as are provided any party . Yet, there was a representative in the court for Appellee and the Agency received service. It was apparent, Judge Martin Lowy had demonstrated abuse of discretion. On August 22, 2013, Appellee filed an answer to the Appellant's original complaint filed on May 29, 2013 [CR 31-32]. Appellee's original answer failed to raise a genuine dispute and material of fact to be granted a "no evidence" partial summary judgment and summary judgment. Ergo, the Appellant's original complaint was filed pursuant "[t]rial de novo review" that prohibits the admission into evidence prior state agency action or the nature of the action [CR 5]. In Appellant's original complaint, he alleged facts that pertained to his work injury. On February 21, 2012, appellant sustained an injury to the neck and shoulder while performing duties and responsibilities as a Pharmacy Manager and Staff Pharmacist for Walgreens Company [CR 6]. On February

5

22, 2012, the appellant contacted the employer and the agency about the work related injury [CR 6]. On February 23, 2012, the appellant sought medical attention from a workers' compensation network doctor at the discretion of the agency. On said date, appellant was diagnosed with cervical radiculitis ICD-code 723.4, and 840.9 shoulder sprain and strain [CR 7]. Trial court erred in failing to identify the Appellee stated "defendant accepted injury as compensable and initiated temporary income benefits (TIBs) on February 22, 2012 [CR 15,16, 46 and 76]. Ergo, the time to dispute the injury has begun to run against the Appellee. On March 29, 2012, Appellant underwent a cervical MRI, identifying a 5mm left paramedian disc protrusion compressing the ventral cord. On May 2, 2012, a peer review was performed beyond the sixty (60) days allowed to investigate and contest an injury [CR 7, 125-134] and "notice of disputed issue(s) and refusal to pay benefits" renders this review irrevelant and inadmissable pursuant "trial de novo" review and it does not apply to the appellant's cervical injury specifically [CR 76, 84]. The same holds true for expert testimony of Richard Suss presented in paper form with a date of November 26, 2012 and Martin Steiner expert testimony presented in paper form dated October 19, 2012, that were introduced in the contested case hearing without the ability to be cross examined by appellant [CR 84-87, 113-114]. These were the exact same opinions introduced to the agency. Trial court erred in allowing inadmissable evidence, or evidence that presented impartiality and bias which did not follow the AMA Guides 4th Edition. According to the Range of Motion presented by Andrew Cole,

6

the Appellant had decrease cervical range of motion [CR 58]. Plaintiff did not have an injury prior to February 21, 2012. The Appellee did not present any evidence to show the contrary, or establish the Appellant had a pre-existing injury. Alternatively, an injury includes aggravation of a pre-existing injury, but the Appellant unequivocally know he has not had a prior injury. Trial court erred in admitting into evidence Dr. Andrew Cole's Maximum Medical Improvement (MMI) and Impairment Rating (IR), that which he was only tasked to perform [CR 53-62]. On June 26, 2012 appellee underwent a MRI of the left shoulder, identifying supraspinatus distal tendon attenuation and mild sub deltoid bursitis [CR 8]. On June 28, 2012, Dr. Andrew Cole submitted an incomplete evaluation of the appellant stating " he was notified and failed to attend appointment on June 26, 2012"Id. That statement is clearly untrue [CR 8, 57]. Trial court clearly erred in admitting into evidence any and all evidence that was used in the the agency's decision, when the Appellant was deprived of any right to cross examine each witness that presented testimony by paper form [CR 51-74]. It is a clear abuse of discretion by the trial court because it failed to accept all factual allegations as true and to draw all inferences in favor of the Appellant before granting summary judgment. Additionally, it allowed inadmissable evidence , ignored the pleading identifying violations of Texas Labor Codes, laws and Government Codes, proximate cause of injury, notification of first Temporary Income Benefits(TIB) payment, Notice of Disputes and first report of injury to employer and insurance company, diagnosis and supporting scientific evidence. The opinions of the expert

7

testimony clearly was not probative, but conclusory [CR 83-87]. Moreover, AMA Guides 4th Edition clearly define an impairment as " any loss of abnormality of psycological, physiological, or anatomical structure or function." More importantly, there are no other medical records to indicate the appellant sustained a prior neck or shoulder injury. The fact remains a compensable injury was sustained and the insurance carrier failed to dispute the claimed injury. Appellant asserted the carrier waived its rights to contest conpensability and stated it was presented to the Appeal Panel referencing  Decision No.080730 [CR 11,p.2].

On August 24, 2012, appellant was [f]ully evaluated by a Dr. Andrew Garrett. It was indicated in his Muscle Atrophy Evaluation, appellant had more than "2 centimeters" difference in circumference of the upper arm indicating moderate and prolonged nerve impairment. Cervical radiculopathy is limited to atrophy greater than 2 cm or loss of relevant refelxes, verified by EMG/NCS nerve study. Additionally, Dr Martin Steiner did not review the report submitted by Dr Andrew Garrett. Dr. Steiner's report is nearly two (2) months later [CR 84]. It is clearly he was bias and prejudice in his opinion[CR 84]. More importantly, Dr. Martin Steiner does not mention at all about the "brachial plexus" which consist of C5 to C8 nerves, where the nerves come together to form median nerve which corresponds to Dr. Edwin Green's finding of Radiculopathy, left-mid [CR 8, 9].  On the other hand, Dr. Andrew Cole report was not complete as stated in his report, if it was admissable evidence [CR 150].

8

## VIII. SUMMARY OF ARGUMENT

This case was based on whether the trial court erred in allowing a "no" evidence partial summary judgment and summary judgment based on inadmissable evidence, without providing notice of the hearing for summary judgment, which deprived Trent S. Griffin of an opportunity to present summary judgment evidence. Additionally, the case was based on abuse of discretion by the trial court granting summary judgment without drawing all inferences in favor of Trent S. Griffin before granting summary judgment. It is very clear that summary judgment was premature or even erroneous based on the meritorious pleading of the Trent S. Griffin. Further, American Zurich Insurance Company did not present an affirmative defense, which was based on the decision and actions of the Texas Department of Insurance-Division of Workers' Compensation here known as the "Agency", when there was "trial de novo" review of the case. Furthermore, the trial court erred by not applying other civil cases that were similar in nature before granting summary judgment. American Zurich Insurance Company did not negate any of Trent S. Griffin's claims in producing inadmissable evidence. Even if the evidence was admissable, American Zurich Insurance Company did not contest the compensability of Trent S. Griffin's work related injury it accepted as compensable that was presented to the Appeals Panel and they failed to act on the decision and order of the Agency.

9

## IX. ARGUMENT

**1. Granting of a "no evidence" partial summary judgment and summary judgment without notice of the hearing or submission date of a summary judgment by the Court or Appellee, deprived Appellant of rights, abused discretion failing to draw favorable inferences, failed to negate one or more elements of each claim, without finding of fact and conclusion of law based on the merits of the case**

On June 27, 2014, Appellee filed a "no-evidence" motion for partial summary judgment, then thirty minutes later filed a traditional summary judgment [CR 41-50, Tex. R. Civ. P. 166a(i), 166a]. Trial court erred in granting a "no evidence" partial summary judgment and a traditional summary judgment [CR 156,157] on the basis of " no evidence" extent of injury beyond a cervical sprain/strain and left shoulder sprain/ strain [CR42] and statutory maximum medical improvement date of February 26, 2014 [CR 47]. Appellant's filing of the petition [v]acated a state agency decision for which "trial de novo " is the manner of review [Gov't Code 2001.176(b)(3)]. A trial court is empowered to grant a motion for summary judgment and render judgment for the movant when it is [c]onclusively shown that the moving party is entitled to judgment as a matter of law. It must be satisfied that either (1) there are no genuine issues of material fact and the movant's summary judgment evidence establishes entitlement to judgment as a matter of law or (2) there is no evidence of one or more essential elements of a claim or defense on which the adverse party has the burden of proof [Tex. R. Civ. P. 166a(c), (i)].

10

Grounds for summary judgment, the movant's proof must conclusively establish all elements of its cause of action as a matter of law [Tex. R. Civ. P. 166a(c); *William v. Glash,* 789 S.W.2d 261, 264 (Tex. 1990); *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548 (Tex. 1985); *Jeter v. McGraw,* 79 S.W.3d 211, 214 (Tex. App.---Beaumont 2002, pet. denied); *Also see MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986). The Supreme Court has said that summary judgment procedure is not intended to deprive litigants of their right to a full hearing on the merits on any real issue of fact; if there is some doubt as to facts, summary judgment should not be rendered, despite the desire for prompt disposal of judicial business. Moreover, a no-evidence motion must challenge a specific element of the opponent's case, and therefore is not appropriate to raise a challenge based on an affirmative defense on which it has the burden of proof *see Nowak v. DAS Inv. Corp.,* 110 S.W.3d 677, 680 (Tex. App.---Houston [14th Dist.] 2003, no pet.) (defendant improperly filed no-evidence motion on own affirmative defense of limitations); *Also see Barraza v. Eureka Co.,* 25 S.W.3d 225, 231 (Tex. App.---El Paso 2000, pet. denied) (party may not urge no-evidence summary judgment on claims or defenses on which it has burden of proof); Instead, the party asserting the defense has the burden of conclusively proving the affirmative defense in order to gain summary judgment *see e.g., Harrill v. A.J.'s Wrecker Service, Inc.,* 27 S.W.3d 191, 193-194 (Tex. App.---Dallas 2000, pet. dism'd w.o.j.) (trial court erred in granting summary judgment on no-evidence motion based on affirmative defense of preemption); [CR 31, 42]. A traditional summary judgment, may not be

11

rendered based on the non-movant's default. A response is not considered necessary to defeat a traditional motion because deficiencies in the movant's own proof or legal theories might defeat the movant's right to judgment as a matter of law. Trial court erred by granting summary judgment when the appellee waived its rights to contest the injury [Tex. Lab. Code 409.021(c); APPEAL NO. 080730;]. Ergo, the movant is not obliged to negate affirmative defenses raised by the defendant's pleadings. However, the movant's proof itself may establish an affirmative defense, such as the defense of limitation. In that case the movant must negate the defense or in the appellant's case, waiver of rights to contest compensability of work injury expired after sixty (60) days after being notified of the injury[APPEAL NO. 002920;  Tex. Lab. Code section 409.021 (c); 124.3(c)(2); *Alexander v. Lockheed Martin Corporation,* 188 S.W.3d 348 (Tex. App.---Forth Worth 2006, pet. denied); *Also see Continental Casualty Insurance Company v. Williamson,* 971 S.W.2d 108 (Tex. App.---Tyler 1998, no pet.); section 401.011(26); *Lopez v. Zenith Insurance Company,* 229 S.W.3d 775 (Tex App.---Eastland 2007, pet. denied); *Zurich American Insurance Company v. Gill,* 173 S.W.3d 878 (Tex. App.---Forth Worth 2005, pet. denied)]. The appellee waived its rights to contest compensability of the appellant's work injury and it was raised before the appeals panel, ergo, the trial court erred in granting summary judgment [ *Krueger v. Atascosa County,* 155 S.W.3d 614 (Tex. App.---San Antonio 2004, no pet.);APPEALS NO. 94224, 020375; CR 11].

The court must give notice of the hearing or submission date of a

12

summary judgment motion *see Martin v. Martin, Martin & Richards, Inc.,* 989 S.W.2d 357, 359 (Tex. 1998); *Okoli v. Texas Dept. of Human Services,* 117 S.W.3d 477, 479 (Tex. App.---Texarkana 2003, no pet.) (notice by a party that summary judgment would be presented to court was not noticed of hearing date). Even though an actual hearing may not occur, because it is within the trial judge's discretion whether to hold a hearing, a hearing date must be set and specified in a notice to the parties in order to set the filing deadlines *see Martin v. Martin, Martin & Richards, Inc.,* 989 S.W.2d 357, 359 (Tex. 1998). Additionally, when a party is given no notice at all of a summary judgment hearing or when a party is deprived of the right to seek leave to file additional affidavits or other written response to the summary judgment the party may preserve error in a post-trial motion *see May v. Nacogdoches Memorial Hosp.,* 61 S.W.3d 623, 626-627 (Tex. App.---Tyler 2001, no pet.) ( when amended motion for summary judgment was served two days before hearing, party had adequate time to file written objection and waived right to object by failing to do so); *Rios v. Texas Bank,* 948 S.W.2d 30, 32-33, n.4 (Tex. App.---Houston [14th Dist.] 1997, no writ); Tex. R. Civ. P. 166a(g).

A party resisting a claim may establish that no genuine issue of fact exists, justifying a "take-nothing" judgment as a matter of law, by negating at least one of the key elements of each of the claimant's theories of recovery *see Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997); *Allen v. A & T Transp. Co. Inc.,* 79 S.W.3d 65, 68 (Tex. App.--- Texarkana 2002, pet.denied); *Jeter v. McGraw,* 79 S.W.3d 211, 214 (Tex.

13

App.---Beaumont 2002, pet. denied). Ergo, to prevail on a motion claiming entitlement to summary judgment as a matter of law, the movant must offer [a]dmissible evidence proving that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response to the motion Tex. R. Civ. P. 166a(c); Gov. Code, section 2001.173. Additionally, a movant need not negate all conceivable theories on which the claimant might recover, rather, the movant is only required to negate the theories raised by the pleadings *see Smithkline Beecham Corp. v. Doe,* 903 S.W.2d 347, 355 (Tex. 1995) (claimant may defeat summary judgment by raising issue of fact as to claim assertable under general language of petition); *Dickson v. State Farm Lloyds,* 944 S.W.2d 666, 667 (Tex. App.---Corpus Christi 1997, no writ); *Also see Dewoody v. Rippley,* 951 S.W.2d 935, 943-944 (Tex. App.---Forth Worth 1997, dis. agr.) ( movant failed to amend motion for summary judgment to assert grounds to defeat causes of action raised in amended petition filed after motion).

In a civil action, pleadings admit claimant's entitlement to judgment. A plaintiff (or litigant asserting a claim for affirmative relief) may be entitled to summary judgment on the pleadings in certain cases. For example, in an action on a sworn account, the failure of the opposing party to deny the truth of the account properly may entitle the claimant to judgment because the answer does not raise any issue of material fact.Tex. R. Civ. P. 185; *see Hidalgo v. Surety Savings and Loan Association,* 462 S.W.2d 540, 543 n.1 (Tex. 1971); *Bado Equipment Co., Inc. v. Ryder Truck*

14

*Lines,* 612 S.W.2d 81, 83 (Civ. App.---Houston [14th Dist.] 1981, ref. n.r.e.) (when suit meets requirement of Tex. R. Civ. P. 185 and defendant's answer does not meet requirements of that rule, plaintiff's motion for summary judgment need only state that defendant's answer does not raise any issue of material fact).

**2. Granting of "no evidence" partial summary judgment and summary judgment was prematurely granted to appellee, abuse of discretion failing to allow discovery, and inadmissable evidence filed into record**

Case law makes it plain that the discovery system's ultimate purpose is to reveal the truth, so that disputes may be decided by the facts that are revealed, not the facts that are concealed *see In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex. 1998); *Tom L. Scott, Inc. v. McIlhany,* 798 S.W.2d 556, 559 (Tex. 1990); *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex. 1987); *Japole v. Touchy,* 673 S.W.2d 569, 573 (TEx. 1984), *disapproved on other grounds, Walker v. Packer,* 827 S.W.2d 833, 842 (Tex. 1992). Ordinarily, the testimony of an expert witness does no more than raise an issue to be determined by the trier of fact; it usually does not establish any fact as a matter of law *see Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 338 (Tex. 1998); *McGilliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986). An expert's opinion must be based on reliable foundation, amounting to more than an unsupported speculation or subjective belief. Expert testimony evidence must be probative and not conclusory and be based on reasonable medical probability to be admissable into evidence [APPEAL NO. 120253]; *Guevara v. Ferrer,* 247 S.W.3d 662 (Tex. 2007). In

15

Texas Supreme Court in *Crump,* announced a general rule that causation requires expert medical evidence. However, there are exceptions to the general rule. In *Guevara v. Ferrer,* the Court stated, " [t]ype of eveidence establishing a sequence of events which provides a strong, logically , traceable connection between the event and the "condition" could suffice to support a causation finding:" 1) are within the common knowledge and experience of a layperson; 2) did not exist before accident; 3) appeared after and close in time to the accident, and; 4) are within the common knowledge and experience of laypersons a work injury. The Texas Supreme Court, later noted non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where [both] the occurences and condition complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were caused by the occurences. *Id. Additionally,* every expert opinion must : 1) be based on accurate facts; 2) state an opinion in a reasonable medical probability (not speculation, conjecture or possibility); 3) Include an explanation of causation and it may not be merely conclusory; and 4)   discuss and eliminate alternate possible causes if relying on differential diagnosis. Furthermore, *in Crump,* does not require injured worker to present expert medical evidence using (differential diagnosis method). Moreover, it does [n]ot require medical evidence when claimant was diagnosed with condition on date of injury. Appellant sought medical attention in less than eighteen (18) hours from the time of injury [APPEAL NO. 120253, 120383; 032608; CR 16 ]. Upon a doctor visit with his PCP lesst

16

than 24 hours, appellant was provided minimal service because he suffered a work injury and was given two weeks worth of medication until he was able to see a workers' compensation network doctor as stated by his PCP. Appellant's PCP, noted left shoulder..., left trapezius muscle tender, neck muscle tender at trapezius and acute myositis [CR 16]. Furthermore, a neck injury can masquerade as a shoulder injury [ APPEAL NO. 080730]. Moreover, Appeals No. 080730 is a situation that is nearly the exact same case, with a difference of left and right side, and the carrier accepted the compensable injury of shoulder strain/sprain and cervical radiculitis and the insurance carrier filed notice of disputed issue(s) and refusal to pay benefits on May 9, 2012 which is not within 60 days of February 21, 2012 or, on or before Aprill 22, 2012 [APPEAL NO.032668]. Though there was inadmissable evidence, or alternatively, if the evidence was admissable, it did not overcome the fact of section 409.021(c), waiver of right to dispute cervical radiculitis, 5mm left paramedian protrusion (herniated disc), and left shoulder strain/sprain. The additional  scientific evidence by EMG/NCS nerve study and MRI of left shoulder identified the underlying causes of the radicular pain and parathesia (numbness, tingling, spasms, and etc.). Dr Andrew Cole's evaluation of the appellant, even if his evidence was admissable, did not dispute the fact of the injury, but that in his [e] stimation, the "injury was chronic and pre-existing [CR 56]; *The Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex 1996)." In a "differential diagnosis method", it was performed by Dr Cole indicating a decrease in sensation on the ulnar aspect of the left hand and decrease in sensation

17

below the elbow on the volar surface of the arm. For the Cervical Spine, it was noted decrease of flexion and extension. Additionally, the Dr. Cole stated " [I] am obtaining shoulder MRI and EMG and consult to fully evaluate exaiminee [CR 146-155]. Ergo, he provided an evaluation that was conclusory, presented with conjecture, possibilities and speculations, and not probative in nature. The same holds true for the Peer Review by Dr Phillip Osborne, Expert Review and Opinions of Dr. Martin Steiner and Dr. Richard Suss. Neither of the experts could provide a means of medical possibilities of causation, nor could they produce any evidence to establish a pre-existing injury and that the injury was not within the course and scope of employment. Moreover, the injuries were accepted as compensable and the insurance carrier did not dispute within the sixty (60) days of notification, and ergo, waiving there rights to compensability and liability for the injuries suffered by the appellant [ APPEAL NO. 080730, 94224, 002920, 111710, 120253, 20383, 130808; TEX. LAB. CODE SECTION 409.021(C), 409.004(2); SECTION 401.011(10), 401.011(11)]. Based on the evidence of Dr. Andrew Cole assigment of MMI/IR, he noted on his cervical flexion, extension, lateral flexion and rotations, though he provided a zero percent Impairment rating, at that time impairment was at least 10% impairment for those measurements and Diagnosis- Related estimated DRE Category III: Radiculopathy (15%) and an unoperated intervertebral disk is estimated at 4%. Dr. Andrew Cole, if evidence was admissable, stated appellant had a zero percent impairment rating. Clearly, that was not based on any findings of probative nature. The MRI evidence presented a

herniated disc and he was diagnosed with cervical radiculitis [ APPEAL NO. 111710].

## X. PRAYER

The issues are whether American Zurich Insurance Company presented summary judgment material evidence to negate all the claims asserted by the Appellant Tren S. Griffin, Sr., whether the evidence was admissible and even if it was, did trial court abuse its discretion by granting a "no evidence" partial summary judgment, then a summary judgment when at least one or more elements of all the claims were not negated, trial court erred by allowing evidence based on the agency's intervening actions or decision in a "trial de novo" review. Additionally, did the trial court abuse its discretion by depriving the Appellant of an opportunity to present summary judgment evidence and without providing notice of a summary judgment hearing that was scheduled without notice from the court or the Appellee.  In the final analysis, the evidence presented by American Zurich is inadmissable, expert testimony, peer review and agency's actions and decisions are devoid. Furthermore, American Zurich Insurance Company did not present an affirmative defense, when it presented a response that was based on the actions or decision of the agency. Moreover, it is clear American Zurich Insurance Comapny waived its rights to contest the compensability of the injury and their liability. For these reasons stated in the brief, Trent S. Griffin, Sr. asks the Court to reverse the trial court's judgment, and render judgment for Trent S. Griffin,

19

Sr., or in the alternative, to reverse the trial court's judgment and remand the case for new trial.

CAUSE NO. 05-14-01510-CV

TRENT S. GRIFFIN, SR.,
Appellant,

v.

AMERICAN ZURICH INSURANCE COMPANY,
Appellee

---

## XI. APPELLANT'S APPENDIX

---

1. No-evidence Partial Summary Judgment dated August 15, 2014

Clerks Record 156.....................................................................Tab 1

2. Summary Judgment dated August 15, 2014

Clerks Record 157.....................................................................Tab 2

3. Plaintiffs Original Complaint dated Mat 29, 2013

Clerks Record 5 - 17..................................................................Tab 3

4. American Zurich Insurance Company Original Answer

dated August 13, 2014.

Clerks Record 31 - 33................................................................Tab 4

5. 101st District Uniform Schduling Order (Level 2)

dated September 17, 2013

Clerks Record 35 - 37................................................................Tab 5

6. FORM NO. 353-3 CITATION THE STATE OF TEXAS

21

dated September 19, 2013

Clerks Record 38 - 39.......................................................Tab 6

7. UNITED STATES POSTAL SERVICE Letter dated August 21, 2013

Clerks Record 40.............................................................Tab 7

8. Defendant's No-Evidence Motion For

Partial Summary Judgment dated June 27, 2014

Clerks Record 41 - 45.......................................................Tab 8

9. Defendant's Motion For Summary Judgment dated June 27, 2014

Clerks Record 46 - 50.......................................................Tab 9

10. Business Records Affidavit dated September 17, 2013

Clerks Record 52 - 62......................................................Tab 10

11. Certfication of Instrument(s) dated September 17, 2013

Clerks Record 64 - 70......................................................Tab 11

12. Affidavit of Richelle Cabrales dated June 19, 2014

Clerks Record 76............................................................Tab 12

13. Dr. Martin Seiner's Report dated October 19, 2012

Clerks Record 84 - 87......................................................Tab 13

14. Dr. Richard Suss's Report dated November 26, 2012

Clerks Record 113 - 114....................................................Tab 14

15. Dr. Phillip Osborne's Report dated May 2, 2012

Clerks Record 125 - 134....................................................Tab 15

16. Request For Findings of Fact and Conclusion of Law

dated September 3, 2014

Clerks Record 161 - 162....................................................Tab 16

17. Motion for New Trial dated September 5, 2014

Clerks Record 164 - 170.................................................................Tab 17

18. Affidavit dated September 4, 2014

Clerks Record 171 - 173.................................................................Tab 18

Respectfully submitted,

Trent S. Griffin, pro se
724 Meandering Dr.
Cedar Hill, TX 75104
469-337-0598[NEW]

23

## CERTIFICATE OF SERVICE

I certify that a true copy of the above Motion for Appellant's Brief and Appellant's Brief has been sent by certfied mail by depositing it enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the care and custody of the United States Postal Service to attorney Todd Richards, The Silvera Firm, 1015 Providence Towers East, 5001 Spring Valley Road, Dallas, Texas 75244, attorney of record for American Zurich Insurance Company at Corporation Service Company, 211 East 7th Street, #620 Austin, Texas, Travis County, Texas.

SIGNED on March 30, 2015.

CMRR: 7013 2250 0002 3632 3256

_____
Trent S. Griffin, Pro se

FILED IN
5TH COURT OF APPEALS

LISA MATZ, CLERK

CAUSE NO. 05-14-01510-CV 2015 APR 24 PM 4: 00

IN THE
FIFTH COURT OF APPEALS
DALLAS, TEXAS

---

TRENT S. GRIFFIN
Appellant,

v.

AMERICAN ZURICH INSURANCE COMPANY
Appellee.

---

On appeal from the
101st District Court of
Dallas County, Texas

---

APPELLANT'S APPENDIX

---

Trent S. Griffin, Sr.
724 Meandering Dr.
Cedar Hill, Texas 75104
Tel. 469-337-0598

TRENT S. GRIFFIN, SR., PRO SE
APPELLANT

CAUSE NO. 05-14-01510-CV

TRENT S. GRIFFIN, SR.,
Appellant,

v.

AMERICAN ZURICH INSURANCE COMPANY,
Appellee

---

## XI. APPELLANT'S APPENDIX

---

1. No-evidence Partial Summary Judgment dated August 15, 2014

Clerks Record 156...................................................................Tab 1

2. Summary Judgment dated August 15, 2014

Clerks Record 157...................................................................Tab 2

3. Plaintiffs Original Complaint dated Mat 29, 2013

Clerks Record 5 - 17................................................................Tab 3

4. American Zurich Insurance Company Original Answer

dated August 13, 2014.

Clerks Record 31 - 33.............................................................Tab 4

5. 101st District Uniform Schduling Order (Level 2)

dated September 17, 2013

Clerks Record 35 - 37.............................................................Tab 5

6. FORM NO. 353-3 CITATION THE STATE OF TEXAS

dated September 19, 2013

1

Clerks Record 38 - 39...................................................................Tab 6

7. UNITED STATES POSTAL SERVICE Letter dated August 21, 2013

Clerks Record 40.........................................................................Tab 7

8. Defendant's No-Evidence Motion For

Partial Summary Judgment dated June 27, 2014

Clerks Record 41 - 45..................................................................Tab 8

9. Defendant's Motion For Summary Judgment dated June 27, 2014

Clerks Record 46 - 50..................................................................Tab 9

10. Business Records Affidavit dated September 17, 2013

Clerks Record 52 - 62................................................................Tab 10

11. Certfication of Instrument(s) dated September 17, 2013

Clerks Record 64 - 70................................................................Tab 11

12. Affidavit of Richelle Cabrales dated June 19, 2014

Clerks Record 76.......................................................................Tab 12

13. Dr. Martin Seiner's Report dated October 19, 2012

Clerks Record 84 - 87...............................................................Tab 13

14. Dr. Richard Suss's Report dated November 26, 2012

Clerks Record 113 - 114............................................................Tab 14

15. Dr. Phillip Osborne's Report dated May 2, 2012

Clerks Record 125 - 134............................................................Tab 15

16. Request For Findings of Fact and Conclusion of Law

dated September 3, 2014

Clerks Record 161 - 162............................................................Tab 16

17. Motion for New Trial dated September 5, 2014

2

Clerks Record 164 - 170..................................................................................Tab 17

18. Affidavit dated September 4, 2014

Clerks Record 171 - 173..................................................................................Tab 18

Respectfully submitted,

Trent S. Griffin, pro se
724 Meandering Dr.
Cedar Hill, TX 75104
469-337-0598[NEW]

3

453E
000341

CAUSE NO. DC-13-05893

| | | |
|---|---|---|
| TRENT S. GRIFFIN,<br>Plaintiff, | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | 101ST JUDICIAL DISTRICT |
| | § | |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT'S NO-EVIDENCE MOTION FOR PARTIAL SUMMARY JUDGMENT

On this date, came on to be considered the No-Evidence Motion for Partial Summary Judgment of Defendant, American Zurich Insurance Company and the Court, having considered said motion, evidence, and arguments of counsel, is of the opinion that said motion should be granted.

It is, therefore, **ORDERED, ADJUDGED, AND DECREED** that Defendant's No-Evidence Motion for Partial Summary Judgment is hereby **GRANTED.**

SIGNED, this 15th day of _August_, 2014.

_____
JUDGE PRESIDING

ORDER ON DEFENDANT'S NO-EVIDENCE MOTION FOR PARTIAL SUMMARY JUDGMENT - PAGE 1
TR/dv/76-359a

453E
000342
2

CAUSE NO. DC-13-05893

| TRENT S. GRIFFIN, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 101ST JUDICIAL DISTRICT |
| | § | |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this date, came on to be considered the Motion for Summary Judgment of Defendant, American Zurich Insurance Company and the Court, having considered said motion, evidence, and arguments of counsel, is of the opinion that said motion should be granted.

It is, therefore, **ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion for Summary Judgment is hereby **GRANTED**.

SIGNED, this 15th day of August, 2014.

_____
JUDGE PRESIDING

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - PAGE 1
TR/div/76-359a

AFFIDAVIT INABILITY TO PAY

chg 252

ORIGINAL

NO. DC13-05893

| | |
|---|---|
| Trent S. Griffin [plaintiff] | } } } } } } } } } } } } | IN THE DISTRICT COURT DALLAS COUNTY, TEXAS [____JUDICIAL DISTRICT] **101st-E** |
| V. | | |
| AMERICAN ZURICH INSURANCE COMPANY [defendant] | | |

## PLAINTIFF'S ORIGINAL PETITION

## TO THE HONORABLE COURT:

Trent S. Griffin, plaintiff, complains of Texas Department of Insurance, Division of Workers' Compensation, hereafter referred to in this petition as the agency and, American Zurich Insurance Company, defendant, and by this petition seeks trial de novo review of a decision of agency, pursuant to Government Code 2001.173 , and as grounds for review shows:

## I.

## JURISDICTION

The plaintiff is employed as a pharmacist with Walgreens Company, residing in Dallas County, Texas. Agency is a state commission having statewide jurisdiction and service of process may be had by serving Chief Clerk Proceedings, Texas Department of Insurance, Division of Workers' Compensation, P.O. Box 17787, Austin, Texas 78744-7787 and

**PLAINTIFF'S ORIGINAL PETITION TO SEEK TRIAL DE NOVO- PAGE 1**

American Zurich Insurance Company, its attorney Todd Richards at The Silvera Firm, 1015 Providence Towers East, 5001 Spring Valley Road, Dallas, Texas 75244 Dallas County, Texas or its registered agent for service of process, Corporation Service Company, 211 East 7th Street, #620 Austin, Texas Travis County, Texas. American Zurich Insurance Company alleges extent of injury to include cervical and shoulder sprain/strain with a maximum medical improvement date of April 26, 2012 and an impairment rating of zero percent. This petition is timely filed in the appropriate court in accordance with 410.252 of the Texas Labor Code, not later than the 45th day after which the division mailed the decision of the appeals panel with the mailing date considered to be the fifth day after the date of April 15, 2013, the date of the appeals panel decision and the county where the employee resided at the time of injury. Plaintiff pleads that discovery should be conducted in accordance with a tailored discovery control plan under Civil Procedure Rule 190.4.

## II.

## SUMMARY OF CASE

On February 21, 2012, the plaintiff sustained an injury to the neck and shoulder while performing duties and responsibilities as a Pharmacy Manager and Staff Pharmacist for Walgreens Company.

On February 22, 2012, the plaintiff contacted the employer and the agency about the work related injury. A true copy of **EMPLOYERS**

**PLAINTIFF'S ORIGINAL PETITION TO SEEK TRIAL DE NOVO- PAGE 2**

**FIRST REPORT OF INJURY OR ILLNESS** is attached as **Exhibit A** and incorporated by reference. The plaintiff on the said date sought medical attention from his primary care physician. A true copy of **PRIMARY CARE PHYSICIAN CHART NOTE** is attached as **Exhibit B** and incorporated by reference.(emphasis added)

On **February 23, 2012**, the plaintiff sought medical attention from a workers compensation network doctor at the discretion of the agency. The plaintiff began treating with doctor R.D. Holder, D.C. Doctor Holder on said date, performed a physical exam and noted there was a decrease range of motion with tenderness of the left shoulder and a **POSITIVE SPURLING'S TEST**. Dr. Holder diagnosed the plaintiff with ICD-codes 723.4 cervical radiculitis and 840.9 sprain and strain of left shoulder.(emphasis added)

On **March 29, 2012** the plaintiff underwent a cervical **MRI** and the findings were cord normal, osseous structures normal, disc spaces normal, and no disc disease identified. The MRI identified a **left paramedian disc 5mm protrusion mildly compressing the ventral cord**. Dr. James Piko's impression was this may account for the symptoms of left upper extremity paresthesia.(emphasis added)

On **May 2, 2012**, a **PEER REVIEW** was performed by Dr. Phillip Osborne, MD. This peer review was beyond the **60 days** allowed to investigate and contest an injury.(emphasis added)

On June 22, 2012 the plaintiff underwent a physical exam by a Designated Doctor, Dr. Andrew Cole. Dr. Andrew Cole's physical

**PLAINTIFF'S ORIGINAL PETITION TO SEEK TRIAL DE NOVO- PAGE 3**

examination was **impartial** and **prejudice**. Dr Cole did not perform a thorough exam of the plaintiff. Dr. Cole was tasked to determine maximum medical improvement and impairment rating, with an additional test of the left knee. In Dr. Cole's designated doctor evaluation, Dr. Cole indicated a **shoulder MRI** and **EMG consult** were needed **to fully evaluate** this examinee. A true copy of Dr. Cole's Determination Of Maximum Medical Improvement(MMI) and Impairment Rating(IR) is attached as **Exhibit C** and incorporated by reference.(emphasis added)

On **June 26, 2012** the plaintiff underwent a MRI of the left shoulder. Dr. James Piko's impression indicated supraspinatus distal tendon attenuation, without any tear identified and mild sub deltoid bursitis.

On June 28, 2012, Dr. Andrew Cole completed the TDI REPORT OF MEDICAL EVALUATION without **fully evaluating the examinee.** Dr. Cole did not review the left shoulder MRI and **did not** obtain the consult for the EMG/NCS nerve study.(emphasis added)

On July 20, the plaintiff underwent an EMG/NCS nerve study. This test was performed by a physician that is specially trained in EDX medicine and the data was provided to an independent expert to review the material for an independent interpretation. Dr. Edwin Green electro diagnostic impression indicated mild, early, left sided mid-cervical radiculopahty. He suggested strong clinical correlation with the cervical spine MRI. Dr. Green primary diagnosis was **Cervical Radiculopathy**, left-mid.(emphasis added).

On August 24, 2012, Dr. Andrew Garrett, Board Certified for MMI and IR, **fully evaluated** the plaintiff and certified the examinee **did not reach**

**PLAINTIFF'S ORIGINAL PETITION TO SEEK TRIAL DE NOVO- PAGE 4**

8

maximum medical improvement. Dr. Garrett indicated in his Muscle Atrophy Evaluation, the examinee had more than a **2 centimeters** difference in circumference of the upper arm indicating moderate and prolonged nerve impairment. In Dr. Garrett's Treatment Plan, the plaintiff has met all criteria for a trial of **Epidural Steroid Injections** ( ESI).

On November 29, 2012 a scheduled benefit review conference was improperly conducted. The agency nor the agency's representative appeared in person to properly discuss the disputes and exchange of documents. The BRC was **impartial** and **prejudice**.

On November 29, 2012, the agency notified the plaintiff to appear before it and show cause why the plaintiff's extent of injury included cervical C6-7 left paramedian protrusion and radiculitis, C5-6 radiculopathy and maximum medical improvement, not at MMI.

## III.

## DECISION AND ORDER

On January 24, 2013, the agency rendered its decision and refused to grant the plaintiff's application for extent of injury to include the left paramedian protrusion(herniated disc), cervical radiculopathy/radiculitis and not at maximum medical improvement. The plaintiff timely filed an appeal and the Appeals Panel Review of the Hearings Officer's Decision and Order became final on the date April 15, 2013 under the provision 410.204 of the Texas Labor Code. All conditions precedent having been

**PLAINTIFF'S ORIGINAL PETITION TO SEEK TRIAL DE NOVO- PAGE 5**

performed or having occurred, the plaintiff is entitled to trial de novo in accordance with 410.251 and 410.252 of the Texas Labor Code and Section 2001.173 of the Government Code.

## IV.

The plaintiff will show that the agency's findings, inferences, conclusions and decisions are unlawful and improper because of one or more of the following:

1. The agency's decision is not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole. In this connection, the plaintiff will show that the extent of injury for compensability is more than a cervical and left shoulder sprain/strain in the finding of fact number 1F, that it is so lacking in evidentiary support that reasonable minds could not have reached that conclusion. The plaintiff plead the use of the AMA Guides 4th edition, prior to injury primary care physician's medical records, work schedules, wage earning statements, current medical records, emails, witness testimony, doctor's testimony, video, prescription records and any other fact findings and conclusions of law to plead the plaintiff's case.

2. The agency's decision denies plaintiff due process of law and the right to equal protection of the law, as guaranteed by the Constitution of the United States and the State of Texas in that it uses the laws to manipulate

injured workers, that can have serious complications and potentially lead to loss of life or limb. The decisions are impartial and prejudice, they lack the real meaning of the words" truth held to be self evident". In accordance with 409.021 and 409.022 of the Texas Labor Code, the carrier waived its rights to contest compensability, filing a dispute passed the 60 days. The Hearing Officer validated the designated doctor and alternative physicians credentials to examine an injured workers compensability, but failed to verify the validity of the dispute. The late filing of dispute was presented to the appeals panel referencing Appeal No. 080730.

3. The agency's decisions exceeds its statutory authority in that it makes life and death decisions regarding injured worker's. The injured worker's can become a menace to society based on improper decisions of the agency. Those decisions can cause families to suffer immensely, physically, emotionally and financially. These proceedings can take to long time and in the meanwhile an injured worker is constantly suffering due the medical necessity/prior authorizations required to treat injuries.

4. The agency's decision was made on unlawful procedure in that the plaintiff was cross-examined and the defense had no one present to be cross-examined. The Ombudsman makes an opening statement and the plaintiff is questioned from both sides with one goal, to get one side of the story on record. There was a lack of interest in what another doctor says about the treatment of an injured worker, only one doctor has more weight even with a preponderance of evidence to show the contrary. The process with TDI-DWC is a farce.

**PLAINTIFF'S ORIGINAL PETITION TO SEEK TRIAL DE NOVO- PAGE 7**

5.    The agency's decision ignored the evidence and, instead, the agency ruled as a result networking in the State of Texas. Accordingly, the agency's decision is arbitrary, capricious and characterized by an abuse or clearly unwanted exercise of discretion. Anytime it is stated an appeal is upheld 95% of the Hearing Officer's Decisions, only 5% of the cases are allowed through. This is evidence at it's best for bias and impartial rulings regardless of the evidence for injured worker's.

## V.

## <u>CONCLUSION</u>

As a result of the unlawful and improper action as described above, The plaintiff has suffered harm and prejudice to substantial rights. In this connection, the plaintiff will show that pain and suffering, depression, distress and anxiety, loss of wages, loss of enjoyment of life, life expectancy, future medical, physical structure damage, job, inability to care properly for children, loss of business efforts, inability to work overtime, inability to maintain home and cars.

**WHEREFORE,** the plaintiff request that the agency and the defendant be cited to appear and answer that the agency be required to prove its allegations against the plaintiff and that on final trial, the plaintiff have judgment of the Court:

**PLAINTIFF'S ORIGINAL PETITION TO SEEK TRIAL DE NOVO- PAGE 8**

1.    Reversing the decision of the agency,  and ordering that the agency and defendant take nothing by its suit.

2.    Awarding the plaintiff costs incurred, together with all other relief to which the plaintiff may be justly entitled.

Respectfully submitted

By _____

Trent S. Griffin [plaintiff]
724 Meandering Dr.
Cedar Hill, Texas 75104
972-291-9569(h)
214-418-9609(c)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above Plaintiff's Original Petition have on this 29th day of May, 2013, been sent by the United States Postal Service for Certified Mail Receipt.

Chief Clerk Of Proceedings
Texas Department of Insurance
Division of Workers' Compensation
P.O. Box 17787
Austin, Texas 78744-7787

CMR: 7012 1640 0002 3410 7516

Todd Richards
The Silvera Firm
1015 Providence Towers East
5001 Spring Valley Road
Dallas, Texas 75244

CMR: 7012 1640 0002 3410 5000

Trent S. Griffin [plaintiff]

**PLAINTIFF'S ORIGINAL PETITION TO SEEK TRIAL DE NOVO- PAGE 10**

Exhibit A

Send the specified copies to your
Workers' Compensation Insurance Carrier
and the injured employee.                    2953503

*Employers - Do not send this form to the
Texas Department of Insurance, Division of Workers' Compensation,
Unless the Division specifically requests a direct filing.

CLAIM #  301202235760001

CARRIER'S CLAIM #

## EMPLOYERS FIRST REPORT OF INJURY OR ILLNESS  02/22/2012

| 1. Name (Last, First, M.I.) | | 2. Sex   F☐  M☒ |
|---|---|---|
| GRIFFIN, TRENT S | | |

| 3. Social Security Number | 4. Home Phone | 5. Date of Birth (m-d-y) |
|---|---|---|
| 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 | (972) 291-9999 | 01/28/1986 |

6. Does the Employee Speak English? If No, Specify Language

YES ☒   NO ☐

| 7. Race   White ☐  Black ☒  Asian ☐ | 8. Ethnicity  Hispanic ☐  Native American ☐  Other ☐ |
|---|---|

9. Mailing Address  Street or P.O. Box
724 MEANDERING DR

| City | State | Zip Code | County |
|---|---|---|---|
| CEDAR HILL | TX | 75104 | |

10. Marital Status   Married ☐  Widowed ☐  Separated ☐  Single ☒  Divorced ☐

| 11. Number of Dependent Children | 12. Spouse's Name |
|---|---|
| | |

13. Doctor's Name

14. Doctor's Mailing Address (Street or P.O. Box)

| City | State | Zip Code |
|---|---|---|
| | | |

| 15. Date of Injury (m-d-y) | 16. Time of Injury | 17. Date Lost Time Began (m-d-y) |
|---|---|---|
| 02/21/2012 | 12:00  am ☐  pm ☒ | |

| 18. Nature of Injury | 19. Part of Body Injured or Exposed |
|---|---|
| STRAIN | SHOULDER(S) |

20. How and Why Injury/Illness Occurred
ALLEGEDLY, THERE WAS VERIFYING A PRESCRIPTION, WHEN HE AGGRAVATED HIS LT. SHOULDER, CAUSING PAIN.

| 21. Was employee doing his regular job?  Yes ☐  NO ☒ | 22. Worksite Location of injury (stairs, dock, etc.) PHARMACY |
|---|---|

23. Address Where Injury or Exposure Occurred Name of business if incident occurred on a business site

| Street or P.O. Box | | County |
|---|---|---|
| City | State | Zip Code |

24. Cause of Injury (fall, tool, machine, etc.)
ILL ON JOB

25. List Witnesses

| 26. Return to work date/or expected (m-d-y) | 27. Did employee die? YES☐ NO☒ | 28. Supervisor's Name VANESSA STRONG | 29. Date Reported (m-d-y) 02/21/2012 |
|---|---|---|---|

| 30. Date of Hire (m-d-y) 07/10/2000 | 31. Was employee hired or recruited in Texas? YES ☐  NO ☐ | 32. Length of Service in Current Position  Months 7  Years 3 | 33. Length of Service in Occupation  Months ___  Years ___ |
|---|---|---|---|

34. Employee Payroll Classification Code

35. Occupation of Injured Worker
MANAGER PHARMACY DEPARTMENT

| 36. Rate of Pay at this Job $3,563.00/mly  $3,563.00/weekly | 37. Full Work Week is: ___ Hours  5 Days | 38. Last Paycheck was: $_____ for 44 Hours or 10 Days | 39. Is employee an Owner, Partner, or Corporate Officer? YES ☐  NO ☐ |
|---|---|---|---|

| 40. Name and Title of Person Completing Form VANESSA STRONG  STR. MGR. | 41. Name of Business  Unit/Location: 06898 WALGREENS DRUGSTORE |
|---|---|

| 42. Business Mailing Address and Telephone Number  Street or P.O. Box 6100 MATLOCK RD  Telephone (817) 472-9974 | 43. Business Location (if different from mailing address)  Number and Street |
|---|---|
| City ARLINGTON  State TX  Zip Code 76002 | City  State  Zip Code |

| 44. Federal Tax Identification Number 36-1924625 | 45. Primary North American Industry Classification System Code (6 digit) 8912 | 46. Specific NAICS Code (6 digit) 8912 | 47. Texas Comptroller Taxpayer No UNK |
|---|---|---|---|

48. Policy Number

49. Workers' Compensation Insurance Company

50. Did you request accident prevention services in past 12 months?
YES ☐  NO ☐   If yes, did you receive them?  YES ☐  NO ☐

51. Signature and Title (READ INSTRUCTIONS ON INSTRUCTION SHEET BEFORE SIGNING)        Date 02/22/2012

X  VANESSA STRONG  STR. MGR.

Reported By

DWC FORM-1 (Rev. 10/05) Page 3

301202235760001

15880201202222006550

2/22/2012

**PROGRESS NOTES**

| | | | |
|---|---|---|---|
| NAME | Trent Griffin | MARITAL STATUS S M W D SEP | DATE OF BIRTH 1-28-66 AGE |

**Formedic**

DIAGNOSIS

Rx

DRUG ALLERGIES

DATE / VITAL SIGNS    SUBJECTIVE    OBJECTIVE    ASSESSMENT    PLANS

B.P. 2-22-12    Cold/sinus

Shoulder injury

S   Yesterday at work pulled L shoulder
can he sign up to Workers Relation
told him he needs to see Workers Comp docher
but right now wants relief for pain

O/E   BP 136/96

① L Shoulder joint Rotation

② L Trapezius muscle tender
Neck tender at insert of trapezius mm

A/c   Acute Myositis

P   ① Robaxin 750 mg #15
② Naproxen 500 Bd #30
③ Tramadol 50 mg tid #20
of work today - needs to see
WComp docher

16

Trent S. Griffin
Page 3

**DETERMINATION OF MAXIMUM MEDICAL IMPROVEMENT (MMI), IMPAIRMENT RATING:**
I am obtaining shoulder MRI and EMG and consult to fully evaluate this examinee.

Preliminary to this data being obtained, my findings are compatible with soft tissue strains to the neck and shoulder as work related with preexisting degenerative conditions of the shoulder and neck causing present remaining symptoms.

As a result, the patient is at MMI with a 0% whole person impairment as related to the work injury. The date of MMI will be placed at 04/28/2011, the date of visit to Dr. Wolski's office, which noted no significant changes. This is approximately two months from the date of injury and is fully compatible with resolution of such soft tissue strains.

I will be obtaining an EMG and shoulder MRI and will provide an addendum after these are obtained. If they affect my decision as to MMI and whole person impairment, I will so notify in the addendum.

**ADDENDUM/CONCLUSIONS ON 6/28/2012 FOR ADDITIONAL TESTING:**
As of 6/28/2012 the examinee has been unable to schedule both EMG and MRI. He was notified of an appointment on 6/26/12, but was unable to attend and has not rescheduled. As a result, since I can not obtain additional testing within DWC time limitations, I will finalize my report with decisions noted above. MMI on 4/28/2012 and 0% impairment. That is calculated DRE Category 1, 0% for the neck. There is a 0% impairment assessed for the left shoulder as the range of motion deficits would not apply to a soft tissue sprain this long after injury. The left knee listed on DWC32 has full range of motion and is therefore 0%

The opinions rendered in this case are the opinions of the evaluator. The evaluation has been conducted on the basis of the medical examination and the documentation provided, with the assumption that the material is true and correct. If more information becomes available at a later date, an additional service/report/reconsideration may be requested.

Such information may or may not change the opinions rendered in this evaluation.. This opinion is based on a clinical assessment, examination and documentation. This opinion does not constitute, per se, a recommendation for specific claims or administrative function to be made or enforced.

Medicine is both an art and a science, and although the examinee may appear to be fit to participate in various types of activities, there is no guarantee that the individual will not be reinjured or suffer additional injury as a result of participating in certain activities.

Andrew T. Cole, M.D., M.P.H.
Board Certified, Occupational Medicine
TX MD H1054
Texas Certified: Designated Doctor, Impairment, ADL Level II
ATC: LBL/swm, D: 06/24/12, T: 06/26/12, Job#: 502683

# ORIGINAL

## CAUSE NO. DC-13-05893

| | | |
|---|---|---|
| TRENT S. GRIFFIN,<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | 101ST JUDICIAL DISTRICT |
| AMERICAN ZURICH INSURANCE<br>COMPANY and TEXAS DEPARTMENT<br>OF INSURANCE, DIVISION OF<br>WORKERS' COMPENSATION | §<br>§<br>§<br>§ | |
|     Defendants. | § | DALLAS COUNTY, TEXAS |

## AMERICAN ZURICH INSURANCE COMPANY'S ORIGINAL ANSWER

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, American Zurich Insurance Company, Defendant in the above entitled and numbered cause, files this Original Answer and would respectfully show the Court and all parties as follows:

### I.

### GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant hereby denies all allegations and hereby requires Plaintiff to prove his cause of action by a preponderance of the evidence. Defendant specifically denies each and every allegation contained in Plaintiff's Original Petition and demands strict proof by a preponderance of the evidence thereon.

### II.

### ADMISSION OF THE DECISION OF THE DIVISION OF WORKERS' COMPENSATION

The issues determined by the Division of Workers' Compensation pursuant to the contested case hearing decision and order and Appeals Panel affirmation were as follows: (1) has the claimant

AMERICAN ZURICH INSURANCE COMPANY'S ORIGINAL ANSWER - PAGE 1
TR:bka *76-359

reached maximum medical improvement, and if so, on what date; (2) if the claimant has reached maximum medical improvement what is the impairment rating; (3) does the compensable injury of February 21, 2012 extend to include a left paramedian disc protrusion at C6-7 and cervical radiculopathy/radiculitis.

The Hearing Officer correctly determined that Plaintiff failed to meet his burden of proof and the compensable injury of February 21, 2012 was not producing cause of a left paramedian disc protrusion at C6-7, cervical radiculopathy or cervical radiculitis and the claimant reached clinical maximum improvement on April 26, 2012 with a 0% impairment rating. The Appeals Panel of the Texas Department of Insurance, Division of Workers' Compensation affirmed this decision in favor of the Defendant. Pursuant to Section 410.169 or Section 410.204(c) of the Texas Labor Code, Defendant requests that the jury be informed of the decision of the Division of Workers' Compensation on each issue to be presented to the jury.

WHEREFORE, PREMISES CONSIDERED, American Zurich Insurance Company prays that upon final hearing herein Plaintiff recover nothing from Defendant, that Defendant have judgment in its favor that the compensable injury of February 21, 2012 does not extend to include a left paramedian disc protrusion at C6-7, cervical radiculopathy or cervical radiculitis and that the claimant reached clinical maximum medical improvement on April 26, 2012 with a 0% impairment rating. Defendant prays that all costs be taxed against Plaintiff. Defendant further prays for such other and further relief to which it may be justly entitled, whether at law or in equity.

Respectfully submitted,

THE SILVERA FIRM
A Professional Corporation

BY: _____
Todd Richards
State Bar No. 16855500
Darryl J. Silvera
State Bar No. 18352280
1015 Providence Towers East
5001 Spring Valley Road
Dallas, Texas 75244
TELEPHONE (972) 715-1750
FACSIMILE (972) 715-1759

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon Plaintiff herein in accordance with the Rules of Civil Procedure on this _21st_ day of August, 2013.

Trent Griffin
724 Meandering Dr.
Cedar Hill, TX 75104-6065

CMRRR # 7012 1010 0002 9077 9936

_____
TODD RICHARDS

449E

.** 000669

CAUSE NO. DC-13-05893

| TRENT S. GRIFFIN, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 101ST JUDICIAL DISTRICT |
| | § | |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

**5**

## 101ST DISTRICT COURT UNIFORM SCHEDULING ORDER (LEVEL 1)

In accordance with Rules 166, 190 and 192 of the Texas Rules of Civil Procedure, the Court makes the following order to control discovery and the schedule of this cause:

1.      This case will be ready and is set for trial at 9:00 a.m. on *November 24* (the "Initial Trial Setting"). Reset or continuance of the Initial Trial Setting will not alter any deadlines established in this Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order. If not reached as set, the case may be carried to the next week.

2.      Unless otherwise ordered, discovery in this case will be controlled by:

(  )    Rule 190.2 (Level 1)

(X)     Rule 190.3 (Level 2)

of the Texas Rules of Civil Procedure. Except by agreement of the party, Leave of court, or where expressly authorized by the Texas Rules of Civil Procedure, no party may obtain discovery of information subject to disclosure under Rule 194 by any other form of discovery.

3.      Any objection or motion to exclude or limit expert testimony due to qualification of the expert or reliability of the opinions must be filed no later than seven (7) days after the close of the discovery period, or such objection is waived. Any motion to compel responses to discovery (other than relation to factual matters arising after the end of the discovery period) must be filed no later than seven (7) days after the close of the discovery period or such complaint is waived, except for the sanction of exclusion under Rule 193.6.

4.      Any amended pleadings asserting new causes of action or affirmative defenses must be filed no later than thirty (30) days before the end of the discovery period and any other amended pleadings must be filed no later than seven (7) days after the end of the discovery period. Amended pleadings responsive to timely filed pleadings under this schedule may be filed after the deadline for

101ST DISTRICT COURT UNIFORM SCHEDULING ORDER (LEVEL 2)                          Page 1

amended pleadings if filed within two (2) weeks after the pleading to which they respond. Except with leave of court, TRCP 166a motions must be heard no later than thirty (30) days before trial.

5.      No additional parties may be joined more than five (5) months after the commencement of this case except on motion for leave showing good cause. This paragraph does not otherwise alter the requirements of Rule 38. The party joining an additional party shall serve a copy of this order on the new party concurrently with the pleading joining that party.

6a.    ☒    The parties shall mediate this case no later than thirty (30) days before the Initial Trial Setting, unless otherwise provided by court order. Mediation will be conducted in accordance with the Standing Dallas County Civil District Court Order Regarding Mediation, which is available from the Dallas County ADR Coordinator. All parties shall contact the mediator to arrange the mediation.

        ☐    The mediator has been selected by agreement of the parties: _____ is hereby appointed mediator. An mediator substitution requested more than 90 days afer the date of this order ma only be made by motion for submission to the Court for good cause and under extraordinary circumstance.

        ☐    Unless otherwise ordered by the Court, the parties shall select a mediator by agreement; if the parties are unable to agree on a mediator, they shall advise the Court within ninety (90) days of the date of this order; the Court will then appoint a mediator.

        ☒    ~~the parties have conferred and are unable to agree on a mediator.~~ Accordingly, *Robert Canby DR* is hereby appointed mediator. Any mediator substitution requested more than 9 days after the date of this order may only be made by submission to the Court for good cause and under extraordinary circumstance.

b.     ☐    One or more of the parties object to mediation of this matter. Any party seeking an order for mediation shall file an appropriate motion no later than 90 days before the Initial Trial Setting and set it for hearing no later than 60 days before the Initial Trial Setting.

7.      Fourteen (14) days before the Initial Trial Setting, the parties shall exchange a list of exhibits, including any demonstrative aids and affidavits, and shall exchange copies of any exhibits not previously produced in discovery; over-designation is strongly discouraged and may be sanctioned. Except for records to be offered by way of business record affidavits, each exhibit must be identified separately and not by category or group designation. Rule 193.7 applies to this designation. On or before ten (10) days before the Initial Trial Setting, the attorneys in charge for all parties shall meet in person to confer on stipulations regarding the materials to be submitted to the Court under this paragraph and attempt to maximize agreement on such matters. By 4 pm on the

Thursday before the Initial Trial Setting, the parties shall file with the Court the materials stated in Rule 166(e)-(l), an estimate of the length of trial, designation of deposition testimony to be offered in direct examination, and any motions in limine. Failure to file such materials may result in dismissal for want of prosecution or other appropriate sanction.

Plaintiff/Plaintiff's counsel shall serve a copy of this Order on any currently named defendant(s) answering after this date.

SIGNED ON: __SEP 17 2013__

JUDGE PRESIDING

cc: Counsel of Record/Pro Se Parties and Mediator

**AGREED AND APPROVED:**

Plaintiff "Pro Se "

Defendant Attorney

Defendant Attorney                          Secondary Attorney

Defendant Attorney                          Secondary Attorney

CERT MAIL

CITATION

DC-13-05893

TRENT S GRIFFIN
vs.
AMERICAN ZURICH INSURANCE
COMPANY, et al

ISSUED THIS
8th day of August, 2013

GARY FITZSIMMONS
Clerk District Courts,
Dallas County, Texas

By: SHELIA BRADLEY, Deputy

Attorney for Plaintiff
TRENT S GRIFFIN PRO SE
724 MEANDERING DR
CEDAR HILL TX 75104
(972) 291-9569



**FILED**
SEP 19 2013
GARY FITZSIMMONS
Dist. Clerk, DALLAS CO, TEXAS
DEPUTY

FORM NO. 353-3 – CITATION
THE STATE OF TEXAS

To:

AMERICAN ZURICH INSURANCE COMPANY
SERVE REGISTERED AGENT CORPORATION SERVICE COMPANY
211 E 7TH STREET #620
AUSTIN TX 78701-3218

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the 101st District Court at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being TRENT S GRIFFIN

Filed in said Court 29th day of May, 2013 against

AMERICAN ZURICH INSURANCE COMPANY

For Suit, said suit being numbered DC-13-05893, the nature of which demand is as follows:
Suit on OTHER (CIVIL) etc. as shown on said petition, a copy of which accompanies this citation.
If this citation is not served, it shall be returned unexecuted.

WITNESS: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 8th day of August, 2013.

ATTEST: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County, Texas

By: _____SHELIA BRADLEY_____, Deputy

DALLAS COUNTY CONSTABLE
FEES PAID
FEES NOT PAID   38

6

**OFFICER'S RETURN**

Case No. : DC-13-05893

Court No.101st District Court

Style: TRENT S GRIFFIN

vs.

AMERICAN ZURICH INSURANCE COMPANY, et al

Came to hand on the _8th_ day of _AUG_, 20 _13_, at _10:18_ o'clock _A_.M. Executed at _211 E 7th St #620_

_Austin, TX_ within the County of _____ at _8:14_ o'clock _A_.M. on the _14th_ day of _AUG_

20 _13_ by delivering to the within named _American Zurich Insurance Company serving_ _registered agent Corporation Service Company by_ _mailing to defendant certified return receipt filing served by US certified_

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by me in serving such process was _____ miles and my fees are as follows: To certify which witness my hand.

| | |
|---|---|
| For serving Citation | $ _65.00_ |
| For mileage | $ |
| For Notary | $ |

(Must be verified if served outside the State of Texas.)

**GARY FITZSIMMONS**
**DISTRICT CLERK**
600 COMMERCE STREET
Dept _____ DALLAS, TEXAS 75202-4606

Sign'd _____

of _____ County,

By _____

Signed and sworn to by the said _____ day of _____ 20_____, before me this _____

to certify which witness my hand and seal of office.

_____ County

Notary Public _____

FILED
SEP 19 2013
GARY FITZSIMMONS
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY



Date: August 21, 2013

MAIL MAIL:

The following is in response to your August 15, 2013 request for delivery information on your Certified Mail™/RRE item number 92148901066154000019756291. The delivery record shows that this item was delivered on August 14, 2013 at 8:14 am in AUSTIN, TX 78701. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service

The customer reference information shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

DC13-5893 SB
CORPORATION SERVICE COMPANY
AMERICAN ZURICH INSURANCE COMPANY
211 E 7TH ST STE 620
AUSTIN TX 78701-3218

40

CAUSE NO. DC-13-05893

| | | |
|---|---|---|
| TRENT S. GRIFFIN, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| v. | § | 101ST JUDICIAL DISTRICT |
| | § | |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## DEFENDANT'S NO-EVIDENCE
## MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, American Zurich Insurance Company, Defendant in the above-entitled and numbered cause, and makes and files this, its No-Evidence Motion for Partial Summary Judgment, and would respectfully show the Court as follows:

### I.

### STATEMENT OF FACTS

This lawsuit stems from an underlying workers' compensation claim wherein Plaintiff sustained compensable injuries to his neck and left shoulder on February 21, 2012.

### II.

### DISCOVERY STATEMENT

An evidentiary hearing in this matter was held at the Division of Workers' Compensation on January 24, 2013, to decide the following disputed issue: Does the compensable injury of February 21, 2012 extend to include a left paramedian disc protrusion at C6-7 and cervical radiculopathy/radiculitis?

After hearing all of the testimony and reviewing all of the evidence, the Hearing Officer correctly determined the compensable injury did not extend to include a left paramedian disc protrusion at C6-7 or cervical radiculopathy/radiculitis.

Plaintiff appealed the Contested Case Hearing Decision and Order to the DWC Appeals Panel, which **affirmed** the Hearing Officer's findings in their entirety. Thereafter, Plaintiff filed this lawsuit. Because Plaintiff has **no** competent medical evidence that his compensable injury extends to include the above-referenced diagnoses, Defendant hereby files this No-Evidence Partial Motion for Summary Judgment.

Plaintiff filed his lawsuit on or about May 29, 2013. Since that time, the parties have exchanged written discovery, which has been completed. An adequate time for discovery has passed and this Motion is ripe for hearing.

## III.

## GROUNDS FOR SUMMARY JUDGMENT

By this Motion, Defendant seeks a partial final judgment which will dispose of one of the claims which have been asserted against it on the following grounds:

(a)     Summary judgment pursuant to Texas Rule of Civil Procedure 166a(i) because there is no evidence as to an essential element or elements of Plaintiff's claim of extent of injury beyond a cervical sprain/strain and left shoulder sprain/strain.

## IV.

## STANDARD OF REVIEW FOR NO-EVIDENCE SUMMARY JUDGMENT UNDER TEX. R. CIV. P. 166a(i)

Under Texas Rule of Civil Procedure 166a(i), when there is no evidence of "one or more central elements" in plaintiff's cause of action after an adequate time for discovery has passed, the trial court *must* grant summary judgment unless the plaintiff produces competent summary judgment

held that omitting the but-for language in the definition of "producing cause" was legally incorrect and erroneous. *Crump*, 330 S.W.3d at 224.

Texas courts have long held expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Insurance Company of North America v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). At the outset, such testimony must come from a person qualified as an expert on the subject of the testimony. Texas Rule of Evidence 702; *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003).

Texas and federal courts further universally hold competent evidence is required to prove the existence and nature of a condition and a causal relationship to the event in question, with the trial judge being charged to scrutinize the expert evidence offered for reliability. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 554 (Tex. 1995); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Since *Daubert* and *Robinson*, Texas courts have held "temporal proximity alone does not meet standards of scientific reliability and does not, by itself, support an inference of medical causation." *Guevara v. Ferrer*, 247 S.W.3d 662, 667 (Tex. 2007); *City of Laredo v. Garza*, 293 S.W.3d 625, 630 (Tex. App.-San Antonio 2009, no pet.); *Crump*, 330 S.W.3d at 219.

In *Guevara*, the Supreme Court went even further, rejecting "the false inference that a temporal relationship proves a causal relationship." *Guevara*, 247 S.W.3d at 667, quoting *Rolen v. Hansen Beverage Co.*, 193 Fed. App'x. 468, 473 (6th Cir. 2006); *Porter v. Whitehall Labs*, 9 F.3d 607, 611 (7th Cir. 1993).

The *Guevara* court further held:

A temporal relationship by itself, produces no evidence of causation. . . .The fact of a temporal relationship establishes nothing except a relationship in time. Proof of a temporal relationship merely suggests the possibility of a causal connection and does not assist plaintiffs in proving medical causation.

*Guevara*, at 667-68, quoting *In re Breast Implant Litigation*, 11 F. Supp.2d 1217, 1238-39 (D. Colo. 1998).

In *City of Laredo*, the court, drawing heavily upon *Guevara*, held that while evidence of an event followed closely by manifestation or treatment for conditions that did not appear before the event raises suspicion that the event at issue caused the conditions, **"suspicion has not been and is not legally sufficient to support a finding of legal causation."** *City of Laredo*, 293 S.W.3d at 630, citing *Guevara*, at 668 (emphasis added).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of extent of injury as Plaintiff has not produced any competent evidence which would create a genuine issue of material fact on this issue.

## VI.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant, American Zurich Insurance Company, respectfully prays that this Honorable Court enter partial summary judgment in favor of Defendant pursuant to Texas Rule of Civil Procedure 166a(i), and grant all other and further relief, in law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

THE SILVERA FIRM
A Professional Corporation


BY: _____/s/ Todd Richards_____
           Todd Richards
           State Bar No. 16855500
           Darryl J. Silvera
           State Bar No. 18352280
           1015 Providence Towers East
           5001 Spring Valley Road
           Dallas, Texas 75244
           TELEPHONE (972) 715-1750
           FACSIMILE (972) 715-1759
           trichards@silveralaw.com

ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure upon Plaintiff on this, the 27th day of June, 2014.


_____/s/ Todd Richards_____
TODD RICHARDS

CAUSE NO. DC-13-05893

| | | |
|---|---|---|
| TRENT S. GRIFFIN, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| v. | § | 101ST JUDICIAL DISTRICT |
| | § | |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

In support of this Motion for Summary Judgment, Defendant American Zurich Insurance Company respectfully states:

### I.

### BACKGROUND

Plaintiff sustained compensable injuries on February 21, 2012, in the form of a cervical and left shoulder sprain/strain. Defendant accepted the claim as compensable and initiated temporary income benefits (TIBs) on February 22, 2012.

On June 22, 2012, Plaintiff was examined by Andrew Cole, M.D. for a DWC appointed designated doctor evaluation to assess maximum medical improvement and impairment rating. Dr. Cole determined Plaintiff had reached maximum medical improvement on April 26, 2012, with a 0% whole person impairment rating.

Plaintiff disputed the designated doctor's determinations regarding maximum medical improvement and impairment rating and a contested case hearing (CCH) was held on January 24, 2013, to decide the following disputed issues:

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - PAGE 1
TR/ej/76-359a

46

1.    Has Plaintiff reached maximum medical improvement and if so on what date?

2.    If Plaintiff reached maximum medical improvement, what is his impairment rating?

After hearing the testimony and reviewing the evidence, the Hearing Officer issued a Decision and Order that Plaintiff reached maximum medical improvement on April 26, 2012, with a 0% impairment rating.

Plaintiff appealed the CCH Decision and Order to the Division of Workers' Compensation Appeals Panel which affirmed the CCH Decision and Order in favor of Defendant.

Thereafter, Plaintiff filed this lawsuit seeking judicial review of the underlying CCH Decision and Order and Appeals Panel decision.

The undisputed evidence establishes Plaintiff reached statutory maximum medical improvement on February 26, 2014.

## II.

## BASIS OF SUMMARY JUDGMENT

Defendant is entitled to a judgment as a matter of law on Plaintiff's dispute of the designated doctor's maximum medical improvement and impairment rating certification since said determinations became final after Plaintiff's statutory maximum medical improvement date.

## III.

## SUMMARY JUDGMENT EVIDENCE

In support of this motion, Defendant relies upon the following:

- Designated doctor report of Andrew Cole, M.D. (attached hereto as Exhibit "A");
- CCH Decision and Order (attached hereto as Exhibit "B");
- Appeals Panel Decision (attached hereto as Exhibit "C"); and
- Affidavit of Richelle Cabralles (attached hereto as Exhibit "D")

## IV.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue as to any material fact, and "the moving party is entitled to judgment as a matter of law." TEX. R. CIV. PROC. 166(a)(c) (Vernon Supp. 1998). A defendant is entitled to summary judgment if the summary judgment evidence establishes as a matter of law a plaintiff cannot recover upon his or her claims. TEX. R. CIV. PROC. 166(a) (Vernon Supp. 1998); *Center Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A defendant satisfies this burden by either negating one essential element of each of the plaintiff's claims or establishing an affirmative defense. *Id.* Once the defendant shows it is entitled to summary judgment, the burden shifts to the plaintiff to "put on competent controverting evidence that proves the existence of a genuine issue of material fact" in order to avoid summary judgment . *Id.; Hall v. Stevenson*, 919 S.W.2d 454, 464, (Tex. App. – Fort Worth 1996, no writ).

## V.

## ARGUMENTS AND AUTHORITIES

Plaintiff's challenge of the designated doctor's maximum medical improvement and impairment rating certification fails as a matter of law.

A.    Applicable Law.

- **Burden of Proof** – The party appealing the decision on the issue described in §410.301(a) has the burden of proof by a preponderance of the evidence. See TEX. LAB. CODE ANN. §410.303.

- **Consideration of Appeals Panel Decision** – In a trial to the court without a jury, the court in rendering its judgment on an issue described by §410.301(a) shall consider the decision of the Appeals Panel. See TEX. LAB. CODE ANN. §410.304(b).

- **Evidence** - Except as provided in §410.307, evidence of extent of impairment shall be limited to that presented to the Division. The court or jury, in its determination of the extent of impairment shall adopt one of the impairment ratings under Sub-chapter G, Chapter 408. See TEX. LAB. CODE §410.306(c).

The undisputed facts establish that the only impairment rating presented to the Division of Workers' Compensation is that of the designated doctor Andrew Cole, M.D. Accordingly, as a matter of law, the trial court has no greater authority to re-evaluate an impairment rating after the statutory MMI date than the Division. *Center Insurance Company, Successor to Business Insurance Company v. Carl Pollitt*, 242 S.W.3d 112; 2007 Tex. App.

## VI.

## CONCLUSION

The summary judgment evidence affirmatively establishes that the only maximum medical improvement and impairment rating evaluation presented to the Division was that of the designated doctor and, as a matter of law, the Court must adopt that certification since Plaintiff reached statutory maximum medical improvement on February 26, 2014.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant, American Zurich Insurance Company, respectfully prays that this Court set this Motion for hearing, that upon hearing the Court grant the Motion for Summary Judgment. Defendant further respectfully requests all relief to which it is otherwise entitled.

Respectfully submitted,

THE SILVERA FIRM
A Professional Corporation


BY:    /s/ Todd Richards
       Todd Richards
       State Bar No. 16855500
       Darryl J. Silvera
       State Bar No. 18352280
       1015 Providence Towers East
       5001 Spring Valley Road
       Dallas, Texas 75244
       TELEPHONE (972) 715-1750
       FACSIMILE (972) 715-1759
       trichards@silveralaw.com

ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure upon Plaintiff on this, the 27th day of June, 2014.


                    /s/ Todd Richards
                    TODD RICHARDS

CAUSE NO. DC-13-05893

| | | |
|---|---|---|
| TRENT S. GRIFFIN, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| v. | § | 101ᴬᵀ JUDICIAL DISTRICT |
| | § | |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## BUSINESS RECORDS AFFIDAVIT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF Dallas | § |

BEFORE ME, the undersigned authority, personally appeared _Caroline Bain_, who, being by me duly sworn, deposed as follows:

My name is _Caroline Bain_. I am over twenty-one (21) years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the Custodian of Records for Andrew Cole M.D.. Attached hereto are _10_ page(s) of records from Andrew Cole M.D. concerning Trent S. Griffin. These said _10_ page(s) of records are kept by Andrew Cole M.D., in the regular course of business, and it was the regular course of business of Andrew Cole M.D. for an employee or representative of Andrew Cole M.D., with personal knowledge of the act, event, condition, opinion, or diagnosis recorded to make the records or to transmit information hereof to be included in such memorandum or records, and the records were made at or near the time of the act, event, condition, opinion, or diagnosis, or reasonably soon thereafter. The records attached hereto are exact duplicates of the originals, and it is a rule not to permit the original records to leave the premises.



ROBERT LOUIS SMITH
Notary Public
STATE TEXAS
My Comm.

_CaroleneBain_
AFFIANT

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this _17TH_ day of _09/17_, 2013.
September 17, 2013

(SEAL)

ROBERT LOUIS SMITH

NOTARY PUBLIC, STATE OF TEXAS

MY COMMISSION EXPIRES: _02/02/2017_

52



Texas Department of Insurance
Division of Workers' Compensation
7551 Metro Center Drive, Suite 100 • MS-94
Austin, TX 78744-1645
(800) 252-7031 phone • (512) 490-1047 fax

*Delay for attempted testing*

Complete if known:
DWC Claim # 12 192699-DA
Carrier Claim # 30 2022 596-0001

## Report of Medical Evaluation

### I. GENERAL INFORMATION

| 4. Injured Employee's Name (First, Middle, Last) | 9. Certifying Doctor's Name and License Type |
|---|---|
| Trent S. Canton | ANDREW T. COLE, MD, MPH |

1. Workers' Compensation Insurance Carrier
Sedgwick CMS

| 5. Date of Injury | 6. Social Security Number | 10. Certifying Doctor's License Number and Jurisdiction |
|---|---|---|
| 02.21.2012 | | H-1054 TEXAS |

2. Employer's Name
Walgreens

11. Certifying Doctor's Phone and Fax Numbers
(Ph) 972-870-9999    (Fax) 972-870-9333

3. Employee's Address (Street or PO Box, City State Zip)
5100 Matlock Rd Arlington TX 76002

8. Employer's Address (Street or PO Box, City State Zip)
724 Meandering Dr. Cedar Hill TX 75104

12. Certifying Doctor's Address (Street or PO Box, City State Zip)
4425 W. Airport Fwy, Suite 590 Irving, TX 75062

### II. DOCTOR'S ROLE

13. Indicate which role you are serving in the claim in performing this evaluation. Only a doctor serving in one of the following roles is authorized to evaluate MMI/impairment and file this report [28 Texas Administrative Code (TAC) §130.1 governs such authorization]:

☐ Treating Doctor  ☐ Doctor selected by Treating Doctor acting in place of the Treating Doctor  ☑ Designated Doctor selected by TDI-DWC
☐ Insurance Carrier-selected RME Doctor approved by TDI-DWC to evaluate MMI and/or permanent impairment after a Designated Doctor examination

NOTE: If you are not authorized by 28 TAC §130.1 to file this report, you will not be paid for this report or the MMI/impairment examination.

### III. MEDICAL STATUS INFORMATION

| 14. Date of Exam | 15. Diagnosis (ICD-9 Codes) 1) | 2) | 3) | 4) |
|---|---|---|---|---|
| 6,22,2012 | 847.0 | 840.8 | 844.9 | |

16. Indicate whether the employee has reached Clinical or Statutory MMI based upon the following definitions:

Clinical Maximum Medical Improvement (Clinical MMI) is the earliest date after which, based upon reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated.

Statutory MMI is the later of:  (1) the end of the 104th week after the date that temporary income benefits (TIBs) began to accrue; or
(2) the date to which MMI was extended by TDI-DWC pursuant to Texas Labor Code §408.104.

a) ☑ Yes, I certify that the employee reached ☐STATUTORY /☑CLINICAL (mark one) MMI on 4, 26, 2012
(may not be a prospective date) and have included documentation relating to this certification in the attached narrative.  - OR -

b) ☐ No, I certify that the employee has NOT reached MMI but is expected to reach MMI on or about ___ / ___ / ___
The reason the employee has not reached MMI is documented in the attached narrative.

NOTE: The fact that an employee reaches either Clinical MMI or Statutory MMI does not signify that the employee is no longer entitled to medical benefits.

### IV. PERMANENT IMPAIRMENT

17. If the employee has reached MMI, indicate whether the employee has permanent impairment as a result of the compensable injury.

"Impairment" means any anatomic or functional abnormality or loss existing after MMI that results from a compensable injury and is reasonably presumed to be permanent. The finding that impairment exists must be made based upon objective clinical or laboratory findings meaning a medical finding of impairment resulting from a compensable injury, based upon competent objective medical evidence that is independently confirmable by a doctor, including a designated doctor, without reliance on the subjective symptoms perceived by the employee.

a) ☐ I certify that the employee does not have any permanent impairment as a result of the compensable injury.  - OR -
b) ☑ I certify that the employee has permanent impairment as a result of the compensable injury. The amount of permanent impairment is 0 %, which was determined in accordance with the requirements of the Texas Labor Code and Texas Administrative Code. The attached narrative provides explanation and documentation used for the calculation of the impairment rating assigned using the appropriate tables, figures, or worksheets from the following edition of the Guides to the Evaluation of Permanent Impairment published by the American Medical Association (AMA):
☐ third edition, second printing, February 1989  - OR -
☑ fourth edition, 1st, 2nd, 3rd, or 4th printing, including corrections and changes issued by the AMA prior to May 16, 2000.

NOTE: A finding of no impairment is not equivalent to a 0% impairment rating. A doctor can only assign an impairment rating, including a 0% rating, if the doctor performed the examination and testing required by the AMA Guides.

### V. DOCTOR'S CERTIFICATION

18. I HEREBY CERTIFY THAT THIS REPORT OF MEDICAL EVALUATION is complete and accurate and complies with the Texas Labor Code and applicable rules. If an impairment rating has been assigned, I certify that I have completed the required training and testing and have a current certification by TDI-DWC to assign impairment ratings in the Texas workers' compensation system or have received specific permission by TDI-DWC to certify MMI and assign an impairment rating. I understand that making a misrepresentation about a workers' compensation claim or myself is a crime that can result in fines and/or imprisonment and nullification of this report.

Signature of Certifying Doctor:                         Date of Certification: 6/18/12

### VI. TREATING DOCTOR'S AGREEMENT OR DISAGREEMENT WITH ANOTHER DOCTOR'S CERTIFICATION

| 19. Treating Doctor's Name and License Type | 22. ☐ I AGREE / ☐ I DISAGREE with the certifying doctor's certification of MMI. |
|---|---|
| 20. Treating Doctor's License Number and Jurisdiction | 23. ☐ I AGREE / ☐ I DISAGREE with the certifying doctor's finding of no impairment.  - OR - |
| 21. Treating Doctor's Phone and Fax Numbers (Ph)    (Fax) | ☐ I AGREE / ☐ I DISAGREE with the impairment rating assigned by the certifying doctor. |

24. I understand that making a misrepresentation about a workers' compensation claim is a crime that can result in fines and/or imprisonment.

Signature of Treating Doctor:                         Date:



DWC069 Rev. 08/11

53



# TEXAS DEPARTMENT of INSURANCE
## Division of Workers' Compensation
1515 N. MOCKINGBIRD LANE, #100 DALLAS, TX 75235-
(214)350-9299

June 04, 2012

ANDREW T. COLE MD
4425 W AIRPORT FWY STE 590
IRVING, TX 75062-5831

| | |
|---|---|
| **Employee:** | GRIFFIN, TRENT S |
| **DWC No.:** | 12192699-50 |
| **Insurance Carrier:** | AMERICAN ZURICH INSURANCE CO |
| **Carrier No.:** | B22180763500010121 |
| **Date of Injury:** | February 21, 2012 |
| **Employer:** | WALGREEN CO |

---

**Item #1 - Designated Doctor Information.**

Doctor: **ANDREW T. COLE MD**
License Number: **H1054**
Telephone Number: **(972) 570-8200**
Date: **June 22, 2012**
Time: **12:00 PM**
Location:
**C-I MEDICAL GROUP**
**4425 W AIRPORT FWY STE 590**
**IRVING, TX 75062-5831**

**Item #2 - Treating Doctor Information.**

Doctor: **EDWARD FRANK WOLSKI MD**
License Number: **F7964**
Telephone Number: **(940) 484-7000**

**NOTE TO TREATING DOCTOR AND CARRIER:**
Send medical records to correspondence address on reverse side.

**Item #3 - Purpose of Examination:**

[X] Determine maximum medical improvement (MMI)

[X] Determine impairment rating

[ ] Determine the ability of the employee to return to work

[ ] Determine the extent of the employee's compensable injury

[ ] Determine whether the employee's disability is a direct result of the work related injury

[ ] Other (Similar Issues):
_____
_____

---

## COMMISSIONER ORDER
### APPROVAL OF REQUEST FOR DESIGNATED DOCTOR EXAMINATION

The Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) received a request (DWC Form-032, Request for Designated Doctor Examination) to appoint a designated doctor to answer questions regarding the specific issue(s) enumerated in Item #3 above. The request was reviewed and considered, and the Commissioner of Workers' Compensation has approved the request as authorized by Texas Labor Code §408.0041 and TDI-DWC rules. If you do not already have a copy of the DWC Form-032 filed to request this examination, you may contact TDI-DWC at 1-800-252-7031 to obtain a copy.

IT IS THEREFORE ORDERED by the Commissioner of Workers' Compensation that parties named in this Order comply with this decision as specified below. The examination conducted pursuant to this Order and all reports and communication that result from this Order shall comply with applicable TDI-DWC rules and provisions of the Texas Labor Code. Failure or refusal by any person to comply with this Order is an administrative violation and may subject the person to sanctions as authorized by the Texas Labor Code or TDI-DWC rules.

IT IS FURTHER ORDERED THAT THE INJURED EMPLOYEE NAMED ABOVE SHALL attend the examination specified in this Order. The name and telephone number of the designated doctor assigned in accordance with Texas Labor Code §408.0041 are listed in Item #1 above. The examination date, time, and location are shown above. The examination location may not be changed without prior approval of the TDI-DWC. If the injured employee fails or refuses to appear for this examination without good cause, the insurance carrier may suspend payment of income benefits. If a scheduling conflict prevents the injured employee from attending the examination as scheduled, the injured employee must reschedule the examination by calling the designated doctor at least 24 hours prior to the scheduled examination. A rescheduled examination must occur within 21 calendar days of the originally scheduled examination.

IT IS FURTHER ORDERED THAT THE DESIGNATED DOCTOR NAMED ABOVE SHALL perform the examination of this injured employee at the examination location and on the date and time shown above. The examination location may not be changed without the prior approval of the TDI-DWC. If a scheduling conflict prevents the designated doctor from attending the examination as scheduled, the designated doctor must reschedule the examination by calling the injured employee at least 24 hours prior to the scheduled examination. A rescheduled examination must occur within 21 calendar days of the originally scheduled examination. If the designated doctor has not received medical records at least three (3) working days prior to the examination, the designated doctor shall report this violation to the TDI-DWC and reschedule

54

*Andrew T. Cole, M.D., M.P.H.*
Occupational Medicine
C-I Med Group DFW
4425 W. Airport Fwy, Ste 250, Irving, TX 75062
Ph: (972) 570-8200     Fax: (972) 570-8933

June 22, 2012

| | |
|---|---|
| Claimant: | Trent S. Griffin |
| DWC Number: | 121926599-60 |
| Insurance Carrier: | American Zurich Insurance Company |
| Date of Injury: | February 21, 2012 |

## DESIGNATED DOCTOR EVALUATION

### MECHANISM OF INJURY:

This is a 46-year-old examinee who notes that he repetitively on the date of injury overextended his neck and shoulder reaching for files in his work as a pharmacist. The examinee notes that while at work he bent his neck sideways to the left on several occasions and on several occasions reached under the counter with his left hand feeling a paresthesia all the way to the tips of his fingers. Thereafter he experienced neck and shoulder pain and loss of function.

### PREEXAMINATION DISCLOSURE AND CONSENT:

This designated medical evaluation of the above-named examinee was carried out by myself. Prior to the evaluation, the examinee was informed that the Texas Department of Insurance, the Worker's Compensation Division, was requesting this examination. The aim of this evaluation was to determine an impairment rating, based on the American Medical Association Guides to the Evaluation of Permanent Impairment, Fourth Edition. It was also explained to the examinee that this meeting was for the purpose of an objective assessment only and not for care, treatment, or consultation. Therefore, there would be no doctor-patient relationship established as a result of this evaluation. The examinee fully understood the conditions of the evaluation and gave full consent for the interview and medical evaluation. This result of this evaluation is based on information provided by the examinee, his physical examination, and a review of medical records. Additional testing will be obtained by the designated doctor in this case. We will obtain a consult and bilateral upper extremity EMG nerve conduction velocity study. We will also obtain a shoulder MRI.

### HISTORY OF PRESENT INJURY:

This 46-year-old examinee was initially examined and noted at the time to have decreased range of motion of the cervical spine. He had trigger points present in the paraspinal muscle. There was spasm of the cervical paravertebral muscles noted on the left at that time. There was decreased motion with tenderness of the shoulder; however there was no Hawkins or Neer sign noted. Neurologic examination noted at that time normal reflexes in the upper and lower extremity and cranial nerves were noted to be intact; however there was noted to be a positive Spurling test on the left. Still, motor and sensory examination was noted to be intact at that time. The diagnosis was cervical radiculitis with a sprain and strain of the left shoulder initially. The patient was prescribed physical therapy and was placed on multiple medications, among which were Flexeril, ibuprofen, and tramadol.

The examinee underwent a cervical MRI which noted C2-3 disc bulging without mass effect, and C6-7 left paramedian disc 5-mm protrusion which mildly compressed the ventral cord. No EMG was obtained or available for me to review at this time. The patient had a cervical x-ray which was unremarkable, according to a report, and a left shoulder x-ray which was unremarkable according to the report.

Despite conservative treatment the examinee notes no significant change in symptoms.

The examinee's case underwent a peer review on May 2, 2012 without physical examination which consisted of a review of medical records. That peer review noted that the examinee had suffered a cervical and shoulder strain and that the present findings that continued were related to underlying degenerative changes in the spine. The findings in the shoulder were noted to be primarily related to the cervical preexisting findings and also to underlying degenerative changes in the shoulder. Shoulder MRI has yet to be obtained. At the designated doctor examination the examinee notes that he continues with paraspinal tenderness to this date and has experienced severe pain in the neck. He states that he has occasional numbness and tingling from the shoulder to the left hand, worse with activities. The examinee is not working at this time. It is noted that the patient has had a performance evaluation and was noted to be performing at less than sedentary PDL, and that his job required medium PDL.

## PHYSICAL EXAMINATION:
General: The examinee is well developed and in no acute distress.

Musculoskeletal: The shoulder examination on the left side notes decreased range of motion of flexion and adduction primarily. The flexion is level 130 degrees and adduction is limited at 140 degrees. Right-sided shoulder examination is essentially normal with flexion of 180 degrees and adduction of 170 degrees.

Although there is no noted complaint of a knee injury, the request has required examination of the knee which noted 130 degrees of flexion with full extension, no instability, and noted negative McMurray, negative pivot, negative Lachman, no swelling, and no tenderness. There was no popping noted. It should also be noted that on the left and right shoulder there was negative Neer and negative Hawkins sign and negative apprehension sign.

Cervical Spine: Examination of the cervical spine notes decreased cervical flexion of 40 degrees, decreased extension of 45 degrees. There is essentially normal left lateral flexion and right lateral flexion of 40 degrees on both sides. Left cervical rotation notes 60 degrees and right cervical rotation notes 50 degrees. There is a left-sided positive Spurling test. On the left side there is tenderness and pain over the shoulder posteriorly extending into the paracervical muscles.

Neurologic: Deep tendon reflexes are bilaterally equal in the upper extremity and 2+. Strength is bilaterally equal and 5/5. There is decreased sensation on the ulnar aspect of the hand and there is decreased sensation below the elbow on the volar surface of the arm.

## IMPRESSION:
1. Cervical sprain – resolved.
2. Left shoulder strain – resolved.
3. Underlying cervical and shoulder impairments that need to be further evaluated and are most likely in my estimation chronic and preexisting. It should also be noted that there is no evidence that the repetitive motion on the day of injury led to any aggravation of this underlying preexisting set of conditions.

**DETERMINATION OF MAXIMUM MEDICAL IMPROVEMENT (MMI), IMPAIRMENT RATING:**
I am obtaining shoulder MRI and EMG and consult to fully evaluate this examinee.

Preliminary to this data being obtained, my findings are compatible with soft tissue strains to the neck and shoulder as work related with preexisting degenerative conditions of the shoulder and neck causing present remaining symptoms.

As a result, the patient is at MMI with a 0% whole person impairment as related to the work injury. The date of MMI will be placed at 04/26/2011, the date of visit to Dr. Wolski's office, which noted no significant changes. This is approximately two months from the date of injury and is fully compatible with resolution of such soft tissue strains.

I will be obtaining an EMG and shoulder MRI and will provide an addendum after these are obtained. If they affect my decision as to MMI and whole person impairment, I will so notify in the addendum.

**ADDENDUM/CONCLUSIONS ON 6/28/2012 FOR ADDITIONAL TESTING:**
As of 6/28/2012 the examinee has been unable to schedule both EMG and MRI. He was notified of an appointment on 6/26/12, but was unable to attend and has not rescheduled. As a result, since I can not obtain additional testing within DWC time limitations, I will finalize my report with decisions noted above. MMI on 4/26/2012 and 0% impairment. That is calculated DRE Category 1, 0% for the neck. There is a 0% impairment assessed for the left shoulder as the range of motion deficits would not apply to a soft tissue sprain this long after injury. The left knee listed on DWC32 has full range of motion and is therefore 0%

The opinions rendered in this case are the opinions of the evaluator. The evaluation has been conducted on the basis of the medical examination and the documentation provided, with the assumption that the material is true and correct. If more information becomes available at a later date, an additional service/report/reconsideration may be requested.

Such information may or may not change the opinions rendered in this evaluation. This opinion is based on a clinical assessment, examination and documentation. This opinion does not constitute, per se, a recommendation for specific claims or administrative function to be made or enforced.

Medicine is both an art and a science, and although the examinee may appear to be fit to participate in various types of activities, there is no guarantee that the individual will not be reinjured or suffer additional injury as a result of participating in certain activities.

Andrew T. Cole, M.D., M.P.H.
Board Certified, Occupational Medicine
TX MD H1054
Texas Certified: Designated Doctor, Impairment, ADL Level II
ATC: LBL/swm, D: 06/24/12, T: 06/26/12, Job#: 502683



# ROM Spine
## Client Information

Client Name: Dr. Trent Griffin

Address:

Dominant Hand: Right Hand

SSN:

Date of Birth:

Gender: Male

Height:

Weight:

Start & Finish Date: Jun 22, 2012

Evaluator: Andrew Cole, MD, MPH

## Range of Motion ► Cervical

Jun 22, 2012 1:34:22 PM

| | Flexion | Extension | Left Lateral Flexion | Right Lateral Flexion | Left Rotation | Right Rotation |
|---|---|---|---|---|---|---|
| Normals: | 60 | 60 | 45 | 45 | 80 | 80 |
| Trial 1: | 45 | 45 | 35 | 30 | 55 | 50 |
| Trial 2: | 40 | 45 | 35 | 35 | 60 | 50 |
| Trial 3: | 40 | 45 | 40 | 40 | 60 | 50 |
| Average | 41.7 | 45.0 | 36.7 | 35.0 | 58.3 | 50.0 |
| Maximum | 45.0 | 45.0 | 40.0 | 40.0 | 60.0 | 50.0 |
| AMA Valid | YES | YES | YES | NO | YES | YES |
| % of Normal | 70% | 75% | 82% | 78% | 73% | 62% |



**C-I MEDICAL GROUP**
4425 W. AIRPORT PWY SUITE 250 IRVING TX 75062 (972) 570-8200

All testing was completed using the FOCUS System. Data Management was compiled through GOES products of BTE Technologies



**Evaluator Comments**

Partially invalid on R Lateral Flexion only, and it is noted patient improved with repetitions. Mild general deficits in all planes of motion.

**Reference Information**

American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition



# Left Upper Extremity Impairment Evaluation Record

Trent Griffin  (00000001183)

6/22/2012

| | Abnormal Motion | | | | Other disorders | Regional Impairment | Amputation |
|---|---|---|---|---|---|---|---|
| | Record motion, ankylosis and impairment % | | | | List type & impairment% | Combine (1)+(2) | Mark level & impairment % |
| **Wrist** | Flexion | Extension | Ankylosis | IMP% | | | |
| Angle | | | | .0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| | RD | UD | Ankylosis | IMP% | | | |
| Angle | | | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| Add IMP% F/E + RD/UD = 0 | | | | | IMP% = 0 | 0 | |
| **Elbow** | Flexion | Extension | Ankylosis | IMP% | | | |
| Angle | | | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| | PRO | SUP | Ankylosis | IMP% | | | |
| Angle | | | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| Add IMP% F/E + PRO/SUP = 0 | | | | | IMP% = 0 | 0 | |
| **Shoulder** | Flexion | Extension | Ankylosis | IMP% | | | |
| Angle | 130 | 50 | | 3 | | | |
| IMP% | 3 | 0 | 0 | | | | |
| | ADD | ABD | Ankylosis | IMP% | | | |
| Angle | 50 | 140 | | 2 | | | |
| IMP% | 0 | 2 | 0 | | | | |
| | INT ROT | EXT ROT | Ankylosis | IMP% | | | |
| Angle | 70 | 50 | | 2 | | | |
| IMP% | 1 | 1 | 0 | | | | |
| Add IMP% F/E + ADD/ABD + IR/ER = 7 | | | | | IMP% = 0 | 7 | IMP% = 0 |

| | |
|---|---|
| I. Amputation Impairment (other than digits) | = 0% UE |
| II. Regional impairment of upper extremity (Combine hand 0% + wrist 0% + elbow 0% + shoulder 7%) | = 7% UE |
| III. Peripheral nerve system impairment | = 0% UE |
| IV. Peripheral vascular system impairment | = 0% UE |
| V. Other disorders (not included in regional impairment) | = 0% UE |
| Total upper extremity impairment (Combine I+II+III+IV+V) | = 7% UE |
| Impairment of the whole person (Use Table 3, p. 20) | = 4% WP |

*Defer not objective Shown to relate to Shoulder if I had a hi-field MRI*

All calculations are based on Chapter 3, Section 3.1, AMA Guides to the Evaluation of Permanent Impairment, 4th Edition.

C-I MEDICAL GROUP
4126 W. AIRPORT FWY SUITE 360 IRVING TX 75062

All testing was completed using the Evaluator System, Data Management was compiled through ODES products of Hanson Medical, Inc.

60

Trent Griffin   (00000001189)                                          8/22/2012

| Abnormal Motion | | | | Other disorders | Regional Impairment | Amputation |
|---|---|---|---|---|---|---|
| Record motion, ankylosis and impairment % | | | | List type & impairment% | Combine (1)+(2) | Mark level & impairment % |
| **Wrist** | Flexion | Extension | Ankylosis | IMP% | | | |
| Angle | | | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| | RD | UD | Ankylosis | IMP% | | | |
| Angle | | | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| Add IMP% F/E + RD/UD = 0 | | | | | IMP% = 0 | 0 | |
| **Elbow** | Flexion | Extension | Ankylosis | IMP% | | | |
| Angle | | | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| | PRO | SUP | Ankylosis | IMP% | | | |
| Angle | | | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| Add IMP% F/E + PRO/SUP = 0 | | | | | IMP% = 0 | 0 | |
| **Shoulder** | Flexion | Extension | Ankylosis | IMP% | | | |
| Angle | 180 | 60 | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| | ADD | ABD | Ankylosis | IMP% | | | |
| Angle | 70 | 170 | | 0 | | | |
| IMP% | 0 | 0 | 0 | | | | |
| | INT ROT | EXT ROT | Ankylosis | IMP% | | | |
| Angle | 70 | 100 | | 1 | | | |
| IMP% | 1 | 0 | 0 | | | | |
| Add IMP% F/E + ADD/ABD + IR/ER = 1 | | | | | IMP% = 0 | 1 | IMP% = 0 |

| | |
|---|---|
| I. Amputation impairment (other than digits) | = 0% UE |
| II. Regional impairment of upper extremity (Combine hand 0% + wrist 0% + elbow 0% + shoulder 1%) | = 1% UE |
| III. Peripheral nerve system impairment | = 0% UE |
| IV. Peripheral vascular system impairment | = 0% UE |
| V. Other disorders (not included in regional impairment) | = 0% UE |
| Total upper extremity impairment (Combine I+II+III+IV+V) | = 1% UE |
| Impairment of the whole person (Use Table 3, p. 20) | = 1% WP |

*All calculations are based on Chapter 3, Section 3.1, AMA Guides to the Evaluation of Permanent Impairment, 4th Edition.*

O-I MEDICAL GROUP
4425 W. AIRPORT FWY SUITE 290 IRVING TX 75062

*All testing was completed using the Evaluator System, Data Management was compiled through ODSS products of Hancun Medical, Inc.*



**Texas Department of Insurance**
**Division of Workers' Compensation**
7551 Metro Center Drive Suite 100 Austin, Texas 78744-1609
(512) 804-4000 (512) 804-4001 fax www.tdi.state.tx.us

RECEIVED SEP 2 8 2013

| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

## CERTIFICATION OF INSTRUMENT(S)

The Commissioner of the Division of Workers' Compensation, as the chief administrative and executive officer and custodian of records of the Division of Workers' Compensation has delegated to the undersigned the authority to certify the authenticity of documents filed with or maintained by or within the custodial authority of the Chief Clerk of Proceedings for Hearings of the Division of Workers' Compensation (DWC) of the Texas Department of Insurance (TDI).

Therefore, I hereby certify that the attached documents are true and correct copies of the documents described below. I further certify that the documents described below are filed with or maintained by or within the custodial authority of the Chief Clerk of Proceedings for Hearings of the Division of Workers' Compensation of the Texas Department of Insurance.

**Hearing Officer Decision on Docket Number 12-192699-01: Trent Griffin v. American Zurich Insurance Company**

IN TESTIMONY WHEREOF, witness my hand and seal of office in Austin, Texas, on September 17, 2013.

ROD BORDELON
Commissioner of the Division of Workers' Compensation



BY: _____

Tiffany Duarte
Chief Clerk of Proceedings

Revised 7/13/2011

64



## TEXAS DEPARTMENT OF INSURANCE
## DIVISION OF WORKERS' COMPENSATION



Si prefiere hablar con una persona de habla hispana acerca de esta correspondencia o de su reclamo, sírvase llamar al 1-800-252-7031.

January 29, 2013

AMERICAN ZURICH INSURANCE CO
1400 AMERICAN LN
SCHAUMBURG, IL 60196-1091


C/O FLAHIVE OGDEN & LATSON
BOX NBR 19

| | |
|---|---|
| DWC No: | 12192699 |
| Docket No: | 12192699-01-CC |
| Carrier No: | B22180763500010121 |
| Employee: | TRENT S. GRIFFIN |
| Employer: | WALGREEN CO |

Date of
Injury:    February 21, 2012

The Hearing Officer has reached a decision and entered an order in the above referenced claim. Copies of the decision and a fact sheet are attached explaining what to do if you want to appeal this Hearing Officer's decision or if the other party appeals the decision.

Please note that if the Carrier has been ordered to pay benefits in accordance with this decision, those benefits, unless otherwise noted, include both indemnity and medical benefits.

If you have questions or require assistance, please call 1-800-252-7031. To expedite the handling of requests for appeal and responses to requests for appeal, all correspondence should be addressed to the:

CHIEF CLERK OF PROCEEDINGS, HEARINGS
TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION
POST OFFICE BOX 17787
AUSTIN, TEXAS 78744-7787

HEARINGS MAIL
PLACED IN AUSTIN
REP BOX
JAN 29 2013

CARRIER COPY RECEIVED
BY CARRIER'S AUSTIN REP
REP_____
BY_____
DATE_____

RECEIVED
JAN 30 2013
FOL Filaroom
Gordon Clayton

Sincerely,

Texas Department of Insurance
Division of Workers' Compensation

DR03 (Rev.03-00)            An Equal Opportunity Employer

65

CONFIDENTIAL
Tex. Labor Code
§402.083

# TEXAS DEPARTMENT OF INSURANCE
## DIVISION OF WORKERS' COMPENSATION
### DALLAS FIELD OFFICE
### DALLAS, TEXAS

TDI/DWC
RECEIVED
JAN 2 4 2013
CHIEF CLERK OF PROCEEDINGS

| | |
|---|---|
| TRENT GRIFFIN,<br>        CLAIMANT | §<br>§<br>§ |
| v. | §<br>§<br>§<br>§ |
| AMERICAN ZURICH INSURANCE<br>COMPANY,<br>        CARRIER | §<br>§<br>§<br>§ |

DOCKET NO.
DA-12-192699-01-CC-DA47

## DECISION AND ORDER

This case is decided pursuant to Chapter 410 of the Texas Workers' Compensation Act and Rules of the Division of Workers' Compensation adopted thereunder.

## ISSUES

A benefit review conference was held on November 29, 2012 to mediate resolution of the disputed issues; however, the parties were unable to reach an agreement. A contested case hearing was held on January 24, 2013 to decide the following disputed issues:

1. Has the Claimant reached maximum medical improvement, and if so, on what date?

2. If the Claimant has reached maximum medical improvement, what is the impairment rating?

3. Does the compensable injury of February 21, 2012 extend to include a herniated disc at C6-7 and cervical radiculopathy?

For good cause issue 3 was amended to the following:

3. Does the compensable injury of February 21, 2012 extend to include a left paramedian disc protrusion at C6-7 and cervical radiculopathy/radiculitis?

1

CONFIDENTIAL
Tex. Labor Code
§402.083

## PARTIES PRESENT

Claimant appeared and was assisted by Valeria Rivera, ombudsman. Carrier appeared and was represented by Todd Richards, attorney.

## EVIDENCE PRESENTED

The following witnesses testified:

For Claimant: Claimant.

For Carrier: None.

The following exhibits were admitted into evidence:

Hearing Officer's Exhibits HO-1 and HO-2.

Claimant's Exhibits C-1 through C-11.

Carrier's Exhibits CR-A through CR-O.

## BACKGROUND INFORMATION

Claimant sustained a compensable injury to his neck and left shoulder on February 21, 2012, when he reached under a counter with his left arm. The parties stipulated the Division appointed Dr. Andrew Cole as designated doctor (DD) to determine maximum medical improvement (MMI) and impairment rating (IR).Carrier accepted as compensable cervical and left shoulder sprain/strains only. Claimant contended the compensable injury also extends to include a left paramedian disc protrusion at C6-7 and cervical radiculopathy/radiculitis.

Extent to include the conditions in dispute required proof through expert opinion evidence, based on reasonable medical probability, with a sufficient explanation of the causal link between the compensable injury event and the condition. This was lacking. The compensable injury is cervical and left shoulder sprain/strains.

There were two certifications. Dr. Cole examined Claimant on June 22, 2012 and certified MMI on April 26, 2012 with a 0% IR. Dr. Andrew Garrett, a doctor selected by the treating doctor acting in place of the treating doctor, examined Claimant on August 24, 2012 and certified Claimant had not reached MMI.

Dr. Garrett rated cervical disc displacement and radiculitis.

Dr. Cole rated the compensable injury, plus a left knee strain, (this condition was on the DWC-32). He assigned no impairment for left knee strain. He concluded the compensable neck and left

2

CONFIDENTIAL
Tex. Labor Code
§402.092

shoulder injuries would have resolved two months after the date of injury, and he chose April 26, 2012 as the MMI date because treating physician Dr. Edward Wolski saw Claimant on that date and noted no significant change in his condition. Dr. Cole found some impairment of the neck and left shoulder on examination however he thought this was probably chronic and pre-existing.

Dr. Cole's certification is not contrary to the preponderance of the other medical evidence.

Even though all the evidence presented was not discussed, it was considered. The Findings of Fact and Conclusions of Law are based on all of the evidence presented.

## FINDINGS OF FACT

1. The parties stipulated to the following facts:

    A. Venue is proper in the Dallas Field Office of the Texas Department of Insurance, Division of Workers' Compensation.

    B. On February 21, 2012 Claimant was the employee of Walgreen Company, Employer.

    C. On February 21, 2012 Employer provided workers' compensation insurance with American Zurich Insurance Company, Carrier.

    D. On February 21, 2012 Claimant sustained a compensable injury.

    E. The Division appointed Dr. Andrew Cole as designated doctor to determine maximum medical improvement and impairment rating.

    F. The compensable injury extends to include cervical and left shoulder sprain/strains.

2. Carrier delivered to Claimant a single document stating the true corporate name of Carrier, and the name and street address of Carrier's registered agent, which document was admitted into evidence as Hearing Officer's Exhibit Number 2.

3. Dr. Cole certified Claimant reached maximum medical improvement on April 26, 2012 with a 0% impairment rating; this certification is not contrary to the preponderance of the other medical evidence.

4. The compensable injury event of February 21, 2012 was not a producing cause of a left paramedian disc protrusion at C6-7, cervical radiculopathy, or cervical radiculitis and was not a producing cause of any enhancement acceleration or worsening of any of those conditions.

3

68

CONFIDENTIAL
Tex. Labor Code
§402.083

## CONCLUSIONS OF LAW

1. The Texas Department of Insurance, Division of Workers' Compensation, has jurisdiction to hear this case.

2. Venue is proper in the Dallas Field Office.

3. Claimant reached maximum medical improvement on April 26, 2012 with a 0% impairment rating.

4. The compensable injury of February 21, 2012 does not extend to include a left paramedian disc protrusion at C6-7, cervical radiculopathy, or cervical radiculitis.

## DECISION

Claimant reached maximum medical improvement on April 26, 2012 with a 0% impairment rating. The compensable injury of February 21, 2012 does not extend to include a left paramedian disc protrusion at C6-7, cervical radiculopathy, or cervical radiculitis.

## ORDER

Carrier is ordered to pay benefits in accordance with this decision, the Texas Workers' Compensation Act, and the Commissioner's Rules. Accrued but unpaid income benefits, if any, shall be paid in a lump sum together with interest as provided by law.

The true corporate name of the insurance Carrier is **AMERICAN ZURICH INSURANCE COMPANY**, and the name and address of its registered agent for service of process is

**CORPORATION SERVICE COMPANY**
**211 EAST 7th STREET, SUITE 620**
**AUSTIN, TEXAS 78701**

Signed this 24th day of January, 2013.

Thomas Hight
Hearing Officer

4

69

THIS LETTER WAS ALSO SENT TO THE FOLLOWING:

TRENT S. GRIFFIN
724 MEANDERING DR
CEDAR HILL, TX 75104-6066

THE SILVERA FIRM
TODD RICHARDS
5001 SPRING VALLEY RD
DALLAS, TX 75244-3946

INFORMATION COPIES WERE ALSO SENT TO:

WALGREEN CO
200 WILMOT RD
DEERFIELD, IL 60015-4620

OMBUDSMAN

| | | |
|---|---|---|
| TRENT S. GRIFFIN, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| v. | § | 101ST JUDICIAL DISTRICT |
| | § | |
| AMERICAN ZURICH INSURANCE | § | |
| COMPANY | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## AFFIDAVIT OF RICHELLE CABRALES

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, personally appeared RICHELLE CABRALES,

who, upon oath, deposed and stated:

My name is Richelle Cabrales. I am over twenty-one (21) years of age, I am of sound mind, and I am fully competent to make this affidavit. I have personal knowledge of the facts contained in this affidavit, and they are all true and correct.

I am employed by Sedgwick CMS as the workers' compensation claims adjuster regarding Trent Griffin in connection with his compensable injury on February 21, 2012, while employed by Walgreens.

Trent Griffin began receiving temporary income benefits on February 22, 2012 as a result of his compensable injury. Accordingly, his statutory maximum medical improvement date is February 26, 2014.

Further, affiant sayeth not.

_____
RICHELLE CABRALES

SUBSCRIBED AND SWORN TO before me this 19 day of June, 2014.

NOTARY PUBLIC, State of Texas

REBECCA ANN BROWN
NOTARY PUBLIC
State of Texas
Comm. Exp. 08-01-2015

My commission expires
8/01/15

AFFIDAVIT OF RICHELLE CABRALES - PAGE SOLO
TR/aj/76-359a

# MARTIN R. STEINER, M.D., F.A.A.N.
## DIPLOMATE AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY
6303 Southwest Freeway, Suite 695 • Houston, Texas 77074
713-771-9191 • Fax 713-771-7115

October 19, 2012

Mr. Jeremy A. Lunn
C/O The Silvera Firm
5001 Spring Valley Road, Suite 1015
East Providence Towers
Dallas, TX 75244
Fax #: (972) 715-1759

Re:  TRENT S. GRIFFIN
     DWC #: 12192699
     Date of Injury:  2/21/2012
     Employer:  Walgreens
     Carrier:  American Zurich Insurance Company
     Claim #: 30120223576

Dear Mr. Lunn:

I have reviewed the following records you have provided me regarding Trent Griffin.

1.   Employer's first report of injury.
2.   Workers' Compensation injury questionnaire.
3.   Walgreens Disability.
4.   Notification of first temporary income benefit payment – 3/7/2012.
5.   Notice of disputed issues – 5/9/2012.
6.   Notification of Maximum medical improvement – 6/29/2012.
7.   Notification of suspension of indemnity benefit payment.
8.   Wol+Med Pain Management – 2/23/2012 through 8/24/2012.
9.   Cedar Hill Imaging – MRI of cervical spine – 3/29/2012.
10.  Physical Performance Exam – 2/24/2012 through 5/29/2012.
11.  Peer review – Phillip Osborne, M.D. – 5/2/2012.
12.  Trent S. Griffin's response to peer review by Dr. Phillip Osborne – 5/14/2012.
13.  Peer review – 6/6/2012.
14.  Peer review – 6/7/2012.
15.  DD evaluation – Andrew T. Cole, M.D. – 6/22/2012.
16.  Interpretation of neurodiagnostic test – Edwin Green, M.D. – 7/20/2012.

**NATURE OF INCIDENT:** On 2/21/2012, Trent Griffin was performing his duties as a pharmacist when he noticed a "pop" in which he then immediately grabbed for his left shoulder. At that time, he did not think anything of it and continued working. He had to reach down below the counter again and this time the pain was worse. This time he had to grab for his entire left arm. He reported that he was unable to turn his head to the left or right because the pain would become unbearable.

Re: TRENT S. GRIFFIN
October 19, 2012
Page # 2

He was seen by his PCP, Dr. Patel, who prescribed muscle relaxers and pain relievers. Dr. Patel then apparently referred him to a "work comp" physician.

Consequently, on 2/23/2012, Mr. Griffin was seen at a Wol+Med Pain Management Clinic. He was evaluated by R. D. Holder, D.C. and diagnosed with a cervical radiculitis as well as a sprain and strain of the left shoulder. Physical therapy was prescribed.

Subsequently, Mr. Griffin has been treated at the Wol+Med Pain Management Clinic from 2/23/2012 through 8/24/2012 without any significant improvement.

An MRI scan of the cervical spine performed on 3/29/2012 was interpreted as showing a left paramedian 5 mm disc protrusion at C6-C7 that was noted to be compressing the ventral cord. There was no mention of any nerve root compression.

An MRI scan of the left shoulder was completed on 6/26/2012 and demonstrated attenuation of the distal supraspinatus tendon. No tears were identified. A mild subdeltoid bursitis was noted to be present. No labral tears were noted.

Various physical performance examinations were performed on a monthly basis from 2/24/2012 through 4/6/2012. A functional capacity evaluation was performed on 5/29/2012. During those four evaluations, there was no clinical improvement noted.

On 5/2/2012, Dr. Phillip Osborne performed a peer review and determined that the extent of injury was that of a cervical and shoulder strain.

Two additional peer reviews were performed to determine whether psychological testing was medically necessary for this injury. Both peer reviewers determined that a three-hour psychological testing battery was not medically necessary.

On 6/22/2012, Trent Griffin was evaluated by Dr. Andrew T. Cole. Dr. Cole determined that Mr. Griffin had reached maximum medical improvement as of 4/26/2012 with a 0% whole person impairment.

An electrodiagnostic study was performed on 7/20/2012 and interpreted by Edwin Green, M.D. Dr. Green stated that the interpretation was based on his independent review and interpretation of data provided by the testing company. Based on the findings of 2+ fibrillations and 1+ positive sharp waves in the left triceps muscle as well as 1+ positive sharp waves in the left biceps muscle, 1+ fibrillations and 1+ positive sharp waves in the left pronator teres muscle and 2+ fibrillations and 1+ positive sharp waves in the left C5 paraspinal muscles as well as 1+ fibrillations and 1+ positive sharp waves in the left C6 paraspinal musculature, Dr. Green concluded that the evidence indicated a mild early left-sided mid cervical (C5-C6) radiculopathy. Dr. Green strongly suggested clinical correlation with a cervical MRI study.

Re: TRENT S. GRIFFIN
October 19, 2012
Page # 3

Based on my review of the above data, I have reached the following opinions:

1.    Trent Griffin at most sustained only a cervical and left shoulder strain secondary to his bending down on two occasions and turning his head to the left on 2/21/2012.

2.    Paraspinal muscle strains are the types of injuries that would be expected to resolve spontaneously in 4-6 weeks. Consequently, any treatment beyond six weeks should be considered unreasonable and unnecessary. (Reference: Official Disability Guidelines, MD Guidelines).

3.    This opinion is supported by the fact that the cervical MRI study performed on Trent Griffin on 3/29/2012 demonstrated only a 5 mm left paramedian disc protrusion which was not shown to be compressing a cervical nerve root at the C6-C7 level. Compression of the ventral spinal cord, if it were significant, would produce signs and symptoms of a cervical myelopathy. There is no medical evidence that Trent Griffin was suffering from a cervical myelopathy (pressure on the cervical spinal cord) at C6-C7 level. There was no medical evidence that he had lower extremity motor weakness, hyperactive reflexes, positive Babinski signs or presence of a sensory level. Likewise, the MRI scan of the left shoulder did not identify any objective abnormality that could be associated with his bending forward and turning his head to the left. Activities such as described by Mr. Griffin would not cause any damage or harm to the physical structure of his left shoulder.

4.    In regards to the interpretation of the neurodiagnostic study performed on Trent Griffin on 7/20/2012, there are a number of issues that need to be addressed.

    A. The Official Disability Guidelines indicates that electrodiagnostic studies should be performed using protocols established by the American Association of Electrodiagnostic Medicine, American Academy of Neurology and the American Academy of Physical Medicine & Rehabilitation. These guidelines indicate that electromyography (needle examination) must be performed by a physician especially trained in electrodiagnostic medicine as the tests are simultaneously performed and interpreted. That physician should be at the bedside if not physically performing the test himself. In this case, Dr. Edwin Green specifically stated that his report was based on an independent review and an interpretation of data provided by the testing company. Clearly, he was not in close physical proximity with Mr. Griffin at the time the study was being performed. Consequently, this interpretation violates the expected standard of care in providing interpretations of electrodiagnostic studies. This opinion has been substantiated by the Texas Medical Board which has reprimanded at least one physician and imposed an administrative penalty for performing electrodiagnostic interpretations and not being physically present at the time the study was being carried out. (See: Proler before the Texas Medical Board)

    B. Even if the electrodiagnostic study was performed correctly, the results interpreted by Dr. Edwin Green do not correlate with the clinical scenario. Dr. Green stated that the study showed evidence of a mild early left-sided mid cervical (C5-C6) radiculopathy. This study was performed on 7/20/2012. The injury actually occurred five months earlier on 2/21/2012. Therefore, if indeed there is evidence of an early left-sided mid cervical radiculopathy, it would not be associated with an incident that occurred five months earlier.

Re: TRENT S. GRIFFIN
October 19, 2012
Page #4

Furthermore, Dr. Green's interpretation was that of a radiculopathy at C5-C6. This level does not correlate with the MRI study performed on Trent Griffin on 3/29/2012. As noted previously, Dr. Green strongly suggested correlation with the cervical MRI study. In this case, however, the cervical MRI study found the abnormality to be at C6-C7. Consequently, there is no correlation between Dr. Green's level of C5-C6 and the MRI study indicating the C6-C7 level of involvement.

Additionally, there was no evidence of nerve root compression or impingement at either the C5-C6 level or the C6-C7 level that would lead to denervation potentials as described by Dr. Green.

5.    In summary, there is no medical evidence contained in the records reviewed that Trent Griffin sustained any damage or harm to the physical structure of his body secondary to the incident in question. There is no clinical correlation between Trent Griffin's subjective symptoms and objective abnormalities. There was no evidence of any focal motor weakness, reflex loss or sensory loss when initially examined on 2/23/2012. There was no evidence of any objective nerve root compression on Mr. Griffin's cervical MRI study of 3/29/2012 and lastly there was no evidence of any electrical abnormalities at the C6-C7 spinal root level.

6.    I would concur with the designated doctor, Dr. Andrew Cole, that Mr. Griffin has a 0% whole person impairment and certainly had achieved MMI by 4/26/2012.

I certify that I hold the appropriate credentials to conduct this review. I received my medical degree from the University of Florida, College of Medicine in 1967 and spent one year as a medical intern at Ben Taub General Hospital from 1967 to 1968. I then spent three years as a neurology resident at Mount Sinai Hospital in New York City. Following completion of my specialty training in Neurology, I spent two years as a staff neurologist with United States Air Force and then beginning in 1973 I have been in private practice in the specialty of Neurology in Houston, Texas to the present time. I have been performing peer-reviews since approximately 1994 supported by evidence-based medicine. I hold an active and unrestricted Texas license (E0154) and I have experience with worker's compensation claims in the state of Texas. I am board certified in the specialty of neurology by the American Board of Psychiatry & Neurology. I am qualified as a designated doctor and have maintained my training in use of the 4th edition of the AMA guides to the evaluation of permanent impairment through courses certified by the Texas Department of Insurance. I certify that I hold the appropriate credentials as defined by 28TAC:180.1 to perform this peer review. I have no conflicts of interest in performing this review.

The above opinions are based on the information that has been provided. Should any additional information become available, I reserve the right to revise my opinions accordingly.

I have based my opinions on reasonable medical probability.

If I can be of any further service to you, please do not hesitate to call.

Sincerely yours,

Martin R. Steiner, M.D.

MRfhus/asd          0104

# RICHARD A. SUSS, M.D., P.A.

## 5938 Desco Drive, Dallas, TX 75225–1603

DIAGNOSTIC RADIOLOGY AND NEURORADIOLOGY CONSULTATION

Tel (214) 363-5690
Fax (214) 363-7940

November 26, 2012

Jeremy A. Lunn
The Silvera Firm
1015 Providence Towers East
5001 Spring Valley Road
Dallas, TX 75244

Re: **Trent Griffin** M/46 D.o.B. 1/28/66
DWC # 12192699    D/L: 2012-Feb-21
Employer: Walgreens
Carrier: American Zurich Ins Co
Claim No. 30120223576

Dear Mr. Lunn:

At your request I have reviewed imaging of Mr. Griffin.

## Cervical Spine MRI, 2012-Mar-29, Cedar Hill Imaging

**Images:** A CD-ROM displays sagittal T1- and T2- and axial T1- and T2*-weighted sequences.

**Findings:** At C6-7 there is a 3 mm left paramedian disc protrusion that makes borderline contact with and minimally if at all deforms the spinal cord, which retains normal signal while the midline dural diameter remains very ample at 12 mm and there is no neural foraminal encroachment. Also noted at C6-7 is mild anterior spurring. The disc retains normal height, and the cervical discs generally show nonspecific signal loss. The facet joints and the other levels are otherwise unremarkable.

**Conclusion:** C6-7 disc protrusion with borderline cord impingement but no compression or significant stenosis. This protrusion and the associated anterior spurring are entirely compatible with, and typical of, chronic degenerative disc disease. There is no MRI evidence of acute or traumatic pathology or aggravation or of anything that can be attributed in reasonable medical probability to events on a particular date such as February 21, 2012.

## Left Shoulder MRI, 2012-Jun-26, Cedar Hill Imaging

**Images:** A CD-ROM displays axial T2*-weighted, oblique sagittal PD-weighted, and oblique coronal STIR and PD- and T2-weighted sequences.

*Page 1*

**Findings:** The rotator cuff and other regional tendons and ligaments are unremarkable. The regional bony contours and marrow signal are normal. The glenoid labrum is unremarkable. There is no appreciable synovial or bursal effusion.

**Conclusion:** Normal left shoulder MRI. The originally reported subjective and meaningless assessment of "Supraspinatus distal tendon attenuation" is not confirmed, nor is any evidence of "bursitis" confirmed.

Sincerely yours,

/s/ *Richard A. Suss, M.D.*

Richard A. Suss, M.D.

114

## EBME
## EVIDENCE BASED MEDICINE EVALUATORS

Phillip Osborns, MD,

May 2, 2012

**PEER REVIEW**

**Mark Hall**
**Med Confirm**
**2001 Bryan Street, Ste 1925**
**Dallas, TX  75201**

RE:   **Claimant:  Trent Griffin**
      **SSN:       XXX-XX-0081**
      **Claim#     391202235760001**
      **DOI:       2-21-12**
      **Employer:  Walgreens Drugstore**

**Dear Mark Hall:**

You asked me to do a peer review on the above named claimant to address several questions posed in your cover letter.

**DESCRIPTION OF INJURY:**

Per The Employer's First Report of Injury, the claimant reported a work injury on 2-21-12 while employed at Walgreens.  On this date, the claimant allegedly was verifying a prescription when he aggravated his left shoulder, causing pain.

**MEDICAL RECORDS AVAILABLE FOR REVIEW:**

- 2-23-12 R. D. Holder, DC., office visit.

- 2-23-12 X-rays of the cervical spine performed by Ed Wolski, MD.

- 2-23-12 X-rays of the left shoulder interpreted by Ed Wolski, MD.

- 2-24-12 Physical Performance Exam.

- Physical therapy on 2-24-12, 2-25-12, 2-27-12, 2-29-12, 3-2-12, 3-5-12.

- 3-9-12 Physical Performance Exam.

5/7/2012                              301202235760001                        8220120807000502

125

- 3-13-12 R. D Holder, DC., office visit.

- 3-13-12 CMP, LP, CBC, platelet.

- Physical therapy on 3-14-12, 3-16-12, 3-19-12, 3-21-12, 3-23-12, 3-26-12, 3-28-12.

- 3-27-12 R. D. Holder, DC., office visit.

- 3-29-12 MRI of the cervical spine interpreted by James Piko, DO.

- Physical therapy on 3-30-12, 4-2-12, 4-4-12, 4-6-12, 4-9-12, 4-11-12.

- 4-26-11 Ed Wolski, MD., DWC-73.

## SUMMARY OF RECORDS:

2-23-12 R. D. Holder, DC., the claimant Mr Griffin is a 46 year-old patient who was injured at work on 02/21/12. The patient injured his neck and left shoulder while performing his normal work duties. The patient went to Dr Patel, his PCP. The physician prescribed muscle relaxers and pain relievers and referred him to a Work Comp physician. Causation: The patient is a pharmacist for Walgreen's. He states that while he was at work he bent his neck sideways to the left side and reached underneath the counter with his left hand to pull some vials out that he needed. He immediately felt a sharp pain in his neck that radiated out through his left shoulder and down his left arm into his hand. The patient states he did not previously have this type of pain. In all medical probability the patient injured his neck and shoulder at work. On exam, Neck: Decreased range of motion of the cervical spine. Myofascial trigger point tenderness in this area. Spasm of cervical paravertebral muscles on the left. Extremities: Decreased range of motion with tenderness of his left shoulder. Hawkins and Neer's sign was negative. Neurological: Normal reflexes in the upper and lower extremities. Cranial nerves were intact. Spurling's was positive on the left. Motor and sensory was intact. Diagnosis: Cervical radiculitis, sprain and strain of left shoulder. Plan: Prescribed physical medicine to decrease pain and increase range of motion. Advised to continue medication given by his PCP. Follow-up in two weeks. Preauthorization Request: The patient has been diagnosed with cervical radiculitis. The patient complains of pain that radiates into the left side of his neck down through his arm to his hand. The patient describes the pain as a shooting, stabbing pain. He complains of his third, fourth and fifth digit of his hand falling asleep. He has decreased range of motion of the cervical spine. Positive Spurling's bilaterally. Motor and sensory is intact. Physical medicine 3X week 4 weeks is medically necessary to decrease pain and increase range of

Trent Griffin
Page 2

motion to allow him to maintain his full-duty status. Therapeutic exercises, therapeutic activities in addition to work reintegration and physical performance testing are the modalities necessary to achieve these goals. DWC-73: the claimant was taken off work through 3-23-12.

2-23-12 X-rays of the cervical spine performed by Ed Wolski, MD., was unremarkable.

2-23-12 X-rays of the left shoulder interpreted by Ed Wolski, MD., was unremarkable.

2-24-12 Physical Performance Exam showed the claimant is functioning below sedentary. His job requires Medium PDL.

Physical therapy on 2-24-12, 2-25-12, 2-27-12, 2-29-12, 3-2-12, 3-5-12.

3-9-12 Physical Performance Exam shows the claimant is functioning below sedentary to sedentary to light. His job requires Medium PDL.

3-13-12 R. D Holder, DC., the claimant complains of severe left shoulder/arm pain. His medications include Flexeril, Ibuprofen and Tramadol. The claimant was continued with therapy. The claimant was referred for an MRI of the cervical spine. The claimant was continued off work through 4-14-12.

3-13-12 CMP, LP, CBC, platelet.

Physical therapy on 3-14-12, 3-16-12, 3-19-12, 3-21-12, 3-23-12, 3-26-12, 3-28-12.

3-27-12 R. D. Holder, DC., the claimant complies of severe neck and left shoulder pain. Diagnosis: Cervical radiculitis, left shoulder strain. The claimant is continued off work through 4-27-12.

3-29-12 MRI of the cervical spine interpreted by James Piko, DO., shows:
C2-3: There is disc bulging without mass effect.
C3-4: There is no disc disease identified. There is no nerve root or cord impingement. C4-5: There is no disc disease identified. There is no nerve root or cord impingement. C5-6: There is no disc disease identified. There is no nerve root or cord impingement. C6-7: There is a left paramedian disc 5 mm protrusion mildly compresses the ventral cord.
Impression: Left paramedian disc protrusion at C6-C7. This may account for the symptoms of the left upper extremity paresthesia.

Physical therapy on 3-30-12, 4-2-12, 4-4-12, 4-6-12, 4-9-12, 4-11-12.

Trent Griffin
Page 3

4-26-11 Ed Wolski, MD., DWC-73: The claimant was returned to work with restrictions through 5-26-12.

## TREATMENT DATA ON TRENT GRIFFIN

| DIAGNOSTICS | FINDINGS |
|---|---|
| 3-29-12 MRI of the cervical spine | shows a left paramedian disc protrusion at C6-C7. This may account for the symptoms of the left upper extremity paresthesia. |

| TREATMENT | # OF VISITS | ODG RECOMMENDATIONS |
|---|---|---|
| Physical therapy | 19 | 10 |

## QUESTIONS TO ADDRESS

## QUESTION #1:

**Based upon the available medical history, what appears to be the extent of injury?**

The Employer's First Report of Injury indicates that on 2-21-12, the claimant allegedly was verifying a prescription when he aggravated his left shoulder, causing pain.

Dr. Holder saw the claimant on 2-23-12 that while he was at work he bent his neck sideways to the left side and reached underneath the counter with his left hand to pull some vials out that he needed. He immediately felt a sharp pain in his neck that radiated out through his left shoulder and down his left arm into his hand. The patient states he did not previously have this type of pain.

It would appear that the claimant had a cervical and shoulder strain. The MRI does show disc bulge at C6-C7 but it does not cause foraminal stenosis. This is not an uncommon finding in patients without back or neck pain.

The 4th edition of The Guides, page 99 notes "what is called osteoarthritis of the spine is due more to increments of age than to injury or illness."

Current literature shows that when comparing discography, myelography, CT, MRI and studies with each other, there is 15-81% of asymptomatic people with abnormalities. Notable studies of the lumbar spine in asymptomatic individuals

Trent Griffin
Page 4

include Boden et al 1990, Jensen et al 1994, Weinrab et al 1989, Paajanen et al 1989, Weisel et al 1984, and Stadnik et al 1998.

- **Lumbar Disc Herniations:** McRae Performed autopsy studies on persons who were free of back pain prior to death. He found a 33% prevalence of posterior disc protrusions.

- Wiesel found that the lumbar spine in asymptomatic individuals demonstrated abnormalities on MR images in 35%. He Found herniated discs in 19.5% of the people under the age of 40 and greater than 27% in those over 40 years of age. He studied only the L4-5 and L5-S1 disc. Weinrab, in asymptomatic females found 54% with bulges or herniations at one or more disc spaces.

- **Lumbar Disc Bulges/Protrusions:** Most authors report abnormalities as a prevalence increasing with age. Boden found bulging in 34% of the 20 to 39 year range and 50% in the 40-59 age groups. For protrusions, 24% for volunteers, 29 to 39 years of age, and 36% for subjects older than 60 years.

- Stadnik also found a relationship to age. Total prevalence of bulging disc was 81%. 33% had at least one disc protrusion. The frequency of protrusion increased as a function of age. 16% of volunteers aged 30 years or younger and 80% of the volunteers older than 60 years had disc protrusions

- About one third (36%) of asymptomatic subjects over the age of 20 years have a normal disc at every level. 38% have an abnormality in more than one disc level. The prevalence of bulges and protrusions was higher at the L4-5 and L5-S1 spaces. Up to 80%. 67% of the people 50 years or older had multiple.

- **Epidemiology of Low Back Pain:** Compounding this problem of common abnormalities in asymptomatic people is the overall incidence of low back pain in the general population. The annual incidence of lifetime prevalence or lifetime incidence of low back pain varied from 1% to 5%. 3.7% experienced low back pain for two weeks or more duration. 1.5% with low back pain experienced sciatica. Of those with sciatica, over 90% had complete recovery by 2 weeks to 30 days with conservative, nonoperative treatment. Dayo, R. A., Tsui-Wu, Y. J.: Descriptive Epidemiology of Low Back Pain and Its Related Medical Care in the United States, Spine, 12: 264, 1997. Fromoier, John W., et. al., "An Overview of the Incidence and Cost of Low Back Pain," Orthopedic Clinics North America, Vol. 22, No. 2, April 1991.

Trent Griffin
Page 5

- Battle and Videman have reported from the Identical Twin Study over 20 years, disc degeneration is predominantly related to genetics. Stress and leading of the lumbar spine has some protective properties.

- Disc protrusion, disc herniation and disc bulges are often found in the asymptomatic population. There is very little relationship between clinical symptoms and radiological signs of degeneration.

- The prevalence of bulging disk and focal disk protrusions was 73% (22 volunteers) and 50% (15 volunteers), respectively. There was one extrusion (3%). Eleven volunteers had annular tears at one or more levels (37%) and 94% of the annular tears enhanced after contrast injection. Asymptomatic medullary compression was found in four patients (13%). CONCLUSION: Annular tears and focal disk protrusions are frequently found on MR imaging of the cervical spine, with or without contrast enhancement, in asymptomatic population. Ernst CW, Stadnik TW, Peeters E, Breucq C, Osteaux MJ. Prevalence of annular tears and disc herniations on MR images of the cervical spine in symptom free volunteers. Eur J. Radiol. 2005 Sep;55(3):409-14. Epub 2005 Jan 1.

- Abnormal magnetic-resonance scans of the cervical spine in asymptomatic subjects. A prospective investigation. Boden SD, McCowin PR, Davis DO, Dina TS, Mark AS, Wiesel SJ Bone Joint Surg Am. 1990 Sep;72(8):1178-84.

- Degenerative disorders of the lumbar and cervical spine. Roh JS, Teng AL, Yoo JU, Davis J, Furey C, Bohlman HH. Orthop Clin North Am. 2005 Jul;36(3):255- 62. Review.

In Dr. Holders description, motor and sensory exam is normal. His DTR are normal. Therefore, I would classify this as a strain.

**QUESTION #2:**

**Based upon the available medical history, what harm or damage appears to have been done to the claimant's physical structure as a direct result of the alleged event?**

Based upon the data provided, the claimant had a soft tissue strain with some nonverifiable radicular complaints.

Trent Griffin
Page 6

## QUESTION #3:

**Based on your understanding of the event and your opinion regarding resulting injury, what would be the anticipated related diagnosis? Include diagnosis codes.**

As per above, a cervical strain (847.0) and shoulder strain (840.9).

**In your review of the medical history, do you note any inconsistency regarding event, extent, or diagnosis of cervical radiculitis?**

Radiculitis implies inflammation of the nerve. This appears to be a myofascial strain with non verifiable radicular complaints.

## QUESTION #4:

**Based on the MDA Guidelines for the injury(ies) you believe were likely caused by this alleged event, what would be the anticipated period of recovery according to the most appropriate job classification and what is the maximum expected period of disability?**

Per current treatment guidelines, strains are usually self limiting and resolve within the first 4-6 weeks post injury.

- "Sprain/strain injuries are noted to resolve in the vast majority of cases (85% of the time) within six weeks" SPINE, 1995, " Scientific Monograph of Quebec Taskforce", W.O. Spitzer, et al.

## QUESTION #5:

**In your opinion is the claimant able to return to work with or without restrictions?**

The claimant has apparently be returned to work with restrictions.

**Per MDA Cervical strains/sprains:**
**Length of Disability**

Supportive treatment, cervical spine sprain or strain.

DURATION IN DAYS

| Job Classification | Minimum | Optimum | Maximum |
|---|---|---|---|
| Sedentary | 1 | 1 | 7 |
| Light | 1 | 7 | 14 |

Trent Griffin
Page 7

| | | | |
|---|---|---|---|
| Medium | 3 | 21 | 42 |
| Heavy | 3 | 35 | 56 |
| Very Heavy | 3 | 42 | 70 |

## QUESTION #6:

**Based on your opinion on the extent of injury, what further treatment medically reasonable and related in light of the ODG? Please site ODG in your response.**

Please see below ODG recommendations for treatment.

### Per ODG 2012 regarding low back pain:

- First visit (day 1):
  - Prescribe decreased activity, if necessary, based on severity and difficulty of job; limited passive therapy with heat/ice (3-4 times/day), stretching/exercise (training by physical therapist OK), appropriate analgesia (i.e., acetaminophen) and/or anti-inflammatory (i.e., ibuprofen) back to work except for severe cases in 72 hours, possibly modified duty; Avoid bed rest
  - No X-Rays unless significant trauma (e.g., a fall)
  - If muscle spasms, then consider muscle relaxant with limited sedative side effects. (Note: The purpose of muscle relaxants is to facilitate return to activity, but muscle relaxants have not been shown to be more effective than NSAID's.)
  - REASSURE PATIENT: Patient education - common problem (90% of patients recover spontaneously in 4 weeks)

- Second visit (day 7 – about 1 week after first visit)
  - Document progress (flexibility, areas of tenderness, motor strength, straight leg raise – sitting & supine)
  - If still 50% disabled then consider referral for exercise/instruction/manual therapy. Options are physical therapist, chiropractor, massage therapist, or occupational therapist (3 visits in first week), or by treating DO/MD. (Choose providers supporting active therapy and not just passive modalities.) Consider screening for psychosocial symptoms in cases with expectations of delayed recovery.
  - Discontinue muscle relaxant
  - Reassure, but if increased numbness or weakness of either leg, get back to provider in one day

Trent Griffin
Page 8

- o Consider referral to nonsurgical musculoskeletal physician (Orthopedist/Physical Med/Sports Med)

- Third visit (day 14 – about 1 week after second visit)
  - o Document progress
  - o Prescribe muscle-conditioning exercises
  - o At this point 66%-75% should be back to regular work
  - o While not indicated in the absence of red flags, if still disabled, then consider imaging study (AP/Lateral 2-view X-Ray of lumbar) to rule out tumor, fracture, osteoporosis, myelopathy [ICD9 721.3, 721.4, 724.02]
  - o Continue therapist, change from passive to active modality, 2 visits in next week, teach home exercises
  - o End manual therapy at 4 weeks (1 visit in last week)

- Fourth visit (day 21 to 28 – about 1-2 weeks after third visit)
  - o Document, if no improvement then:
  - o First MRI (about 3% of total cases, or 30% of radicular cases) to confirm extruded disk with nerve root displacement (>= 1 month conservative therapy)
  - o (MRI or CT not indicated without obvious clinical level of nerve root dysfunction, clear radicular findings, or before 3-4 weeks)

## Per ODG 2012 regarding treatment for shoulder injuries

- Initial evaluation should include:
  - o Determine the type of trauma (direct trauma, fall, repetitive motion, twisting incident, etc.).
  - o Test the range-of-motion of the joint (normal, mild restriction, severe restriction, or complete restriction).
  - o An initial evaluation of the shoulder requires accurate diagnosis of shoulder injuries by careful inspection and palpation of the shoulder area. Although the shoulder is generally swollen, the injury is usually defined by direct tenderness over the injured area

If not significantly improved then prescribe physical therapy (gentle range-of-motion exercises plus exercises that strengthen the rotators and stabilize the scapula) should be started for home exercise training.

  - o Further relaxation and pain control can be achieved by injecting an anesthetic under the acromion (laterally or anteriorly) into the shoulder joint.
  - o Corticosteroid injection trial .

- MRIs are quite accurate in differentiating chronic impingement from tears of the rotator cuff, and should be employed when

Trent Griffin
Page 9

CAUSE NO. DC-13-05893

TRENT S. GRIFFIN

    Plaintiff,

v.

AMERICAN ZURICH INSURANCE

COMPANY

    Defendant.

IN THE DISTRICT COURT

101st JUDICIAL DISTRICT

DALLAS COUNTY, TEXAS

## REQUEST FOR FINDING S OF FACT AND CONCLUSION OF LAW

TO THE HONORABLE COURT:

Trent S. Griffin, a plaintiff in the above-referenced cause, in which judgment was rendered on August 15, 2014, requests that you state, in writing, the facts found by you, and that you separately state, in writing, your conclusion of law, and further, that you file such findings of fact and conclusions of law with the clerk of this Court so that they shall be part of the record of the above cause, all in accordance with Rule 297 of the Texas Rules of Civil Procedure.

1

Respectfully submitted,

Trent S. Griffin, Pro se
724 Meandering Dr.
Cedar Hill, Texas 75104
214-418-9609

2

## CERTIFICATE OF SERVICE

I certify that a true copy of the above Request for Fact and Conclusions of Law has been been sent by certfied mail by depositing it enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the care and custody of the United States Postal Service to attorney Todd Richards, The Silvera Firm, 1015 Providence Towers East, 5001 Spring Valley Road, Dallas, Texas 75244, attorney of record for American Zurich Insurance Company at Corporation Service Company, 211 East 7th Street, #620 Austin, Texas, Travis County, Texas. SIGNED on September 3rd, 2014.

Trent S. Griffin, Pro se

1

ORIGINAL

CAUSE NO. DC-13-05893

TRENT S. GRIFFIN

    Plaintiff,

v.

IN THE DISTRICT COURT

101st JUDICIAL DISTRICT

AMERICAN ZURICH INSURANCE

COMPANY

    Defendant.

DALLAS COUNTY, TEXAS

## MOTION FOR NEW TRIAL

TO THE HONORABLE COURT:

Trent S. Griffin, Sr., Plaintiff, moves this Court to set aside the judgment rendered on August 15th, 2014, in the above-styled and number casue and to order a new trial, and in support of this motion shows:

### I.   PRELIMINARY MOTION

1. The trial court erred in the ruling, allowing defendant to file inadmissable evidence. In accordance with Government Code 2001.173, TRIAL DE NOVO REVIEW, (a) If the manner of review authorized by law for the decision in a contested case that is the subject of complaint is by trial de novo, the reviewing court shall try each issue of fact and law in the

1

manner that applies to other civil suits in the state as though there had not been an intervening agency action or decicison but [may not admit] in evidence the fact of prior state agency action or the nature of that action except to the limited extent necessary to show compliance with statutory provisions that vest jurisdiction in the court.

2. The court erred in granting the defendants motion of summary judgment without providing the parties notice of the hearing or submission date of a summary judgment motion.[see *Martin v. Martin & Richards, Inc.*,989 S.W.2d 357, 359 (Tex.1998); *Okoli v. Texas Dept. of Human Services*, 117 S.W.3d 477, 479 (Tex. App.—Texarkana 2003, no pet.) (notice by a party that summary judgment motion would be presented to court was not notice of hearing date); *see also* Tex. R. Civ. P. 4; *Lewis v. Blake*, 876 S.W.2d 314, 315 (Tex. 1994) ( disapproving courts of appeals' opinion that 21 daysmust elapse between date of service and date of hearing)]. Even though an actual hearing may not occur, because it is within the trial judge's discretion whether to hold a hearing, a hearing date must be set and specified in a notice to the parties in order to set the filing deadlines [*see Martin v. Martin & Richards*, Inc., 989 S.W.2d 357, 359 (Tex. 1998)]. The plaintiff was not given notice at all of the summary judgment hearing. In addition, the plaintiff was deprived of any right to file a written response to the summary judgment sought by the defendant, American Zurich Insurance Company. [*see May v. Nacogdoches Memorial Hosp.*, 61 S.W.2d, 626-627 ( Tex. App.—Tyler 2001, no pet.)].

2

165

## II. EVIDENCE

3. The trial court erred in the ruling, allowing defendant to file inadmissable evidence. In accordance with Government Code 2001.173, TRIAL DE NOVO REVIEW, (a) If the manner of review authorized by law for the decision in a contested case that is the subject of complaint is by trial de novo, the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in the state as though there had not been an intervening agency action or decicison but [may not admit] in evidence the fact of prior state agency action or the nature of that action except to the limited extent necessary to show compliance with statutory provisions that vest jurisdiction in the court.

4. The trial court erred in admitting into evidence of the defendant, Texas Department of Insurance Division of Workers' Compensation Commissioner's Order for MMI/IR determination, a state doctor DWC069 certification form, a state doctor's evaluation with range of motion records of the plaintiff (doctor's report of Andrew Cole, M.D.) as Exhibit "A", Contetsted Case Hearing Decision and Order as Exhibit "B", and Appeals Panel Decision as Exhibit "C". see Government Code 2001.173.

5. The trial court erred in admitting into evidence expert testimony, which in Texas Supreme Court in *Crump* announced a general rule that causation requires expert medical evidence. However, there are exceptions to the general rule. In *Guevara v. Ferrer* the Court stated: Type of evidence establishing a sequence of events which provides a strong, logically traceable connection between the event and the "condition" could suffice

3

to support a causation finding 1) are within the common knowledge and experience of a layperson, 2) did not exist before accident, 3) appeared after and close in time to the accident and 4) are within the common knowledge and experience of layperson a work injury. The Texas Supreme Court, later noted [non-expert] evidence alone is sufficient to support a finding of causation in limited circumstances where [both] the [o]ccurence and [c]ondition complained of are such that the general experience and common sense of layperson are sufficient to evaluate the conditions and whether they were probably caused by the occurence. *see Guevara v. Ferrer* 247 S.W.3d 662 (Tex. 2007).

6. The trial court erred in admitting into evidence a peer review provided by Dr. Phillip Osborne on May 2, 2012. The defendant [did not] dispute the or contest the compensability of the plaintiff's injury on or before the sixty (60) days after the date on which the insurance carrier is notified of the injury, the insurance carrier waives its right to contest compensability. The initiation of payments by an insurance carrier does not affect the right of the insurance carrier to continue to investigate or deny the compensability of an injury during the sixty(60) day period. *see Texas Labor Code* section 409.021(c). In addition, the peer review [does not] provide any newly discovered evidence that was performed after the sixty(60) days to contest compensability. The plaintiff suffered a cervical spine injury, and the peer review is specific to lumbar spine conditions. Further, in accordance with [section 409.021(d)], an insurance carrier that contests compensability of the claimed injury after sixty(60) days on the basis of newly discovered

4

evidence is liable for, and must continue to pay, all benefits until the Division has made a finding that the evidence could not have been reasonably discovered earlier which never occurred.[ section 124.3(c)(2).

7.    The trial court erred in not reviewing the evidence that contained genuine disputes. Dr. Martin Steiner's Nature of Incident Report dated October 19, 2012 contained the sixty(60) day time frame to contest compensability. It identifies the "notification of first income benefit payment" dated 3/27/2012 and "notice of disputes issues" dated 5/9/2012 which is in excess of sixty(60) days. Moreover, in the defendant's motion for summary judgment, under "BACKGROUNG", the defendant accepted the claim as compensable and initiated temporary income benefits (TIBs) on February 22, 2012. The insurance carrier had knowledge  and was notified of the injury on February 22, 2012. Therefore, the insurance carrier waived its rights to compensability when the insurance carrier submitted a "notice of disputes" to the Division.

## III.    THE CHARGE

8.    The trial court erred in refusing to review the following issues. These issues were supported by an affirmative written pleading, raised by evidence, and should have been part of the review process. It is clear and conclusive, the defendant [did not] establish all elements of its cause of action as a matter of law.[Tex. R. Civ. P. 166a(c); see *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548 (Tex. 1985); *Jeter v. McGraw*, 79 S.W.3d 211, 214 (Tex.

5

App.—Beaumont 2002, pet.denied); To prevail and put the burden on the non-movant to raise a genuine issue of material fact, the movant must conclusively establish, by [proper] summary judgment evidence, all essential elements of the claim[ *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986)].

## IV. LACK OF EVIDENCE

9. The was no evidence to support the trial court in granting a summary judgement. The evidence that was admitted is inadmissable because this was a trial de novo pursuant Government Code 2001.173.

10. The trial court erred in the ruling, allowing defendant to file inadmissable evidence. In accordance with Government Code 2001.173, TRIAL DE NOVO REVIEW, (a) If the manner of review authorized by law for the decision in a contested case that is the subject of complaint is by trial de novo, the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in the state as though there had not been an intervening agency action or decicison but [may not admit] in evidence the fact of prior state agency action or the nature of that action except to the limited extent necessary to show compliance with statutory provisions that vest jurisdiction in the court.

## V. WEIGHT OF THE EVIDENCE

11. The trial court erred in determining the defendant's evidence was acceptable in trial de novo. The evidence presented by PEER REVIEW by Dr.

6

169

Phillip Osborne doesn't correlate to the plaintiff's injury of Cervical Spine Injury and the Expert Witness Martin Steiner, M.D. is irrevalant because the insurance carrier waived its rights to contest the compensability of the injury within the sixty(60) day period after notification of the injury. Moreover, the occurence and condition of the injury a layperson can determine the work injury.

12. The defendant has not provided sufficient evidence to support the trial court's finding for summary judgment on all elements in an affirmative pleading supported with evidence. The evidence that was submitted to support a summary judgment is inadmissable pursuant Government Code 2001.173.

13. The plaintiff exercised due diligence in preparing for trial, and failure to submit summary judgment evidence when there was no notice of hearing or submission date of a summary judgment motion provided by the court or the defendant's attorney.

WHEREFORE, Plaintiff request that this Court set aside the judgment in this cause and order a new trial.

Respectfully submitted,

Trent S. Griffin, Pro se
724 Meandering Dr.
Cedar Hill, Texas 75104
214-418-9609

7

170

CAUSE NO. DC-13-05893

TRENT S. GRIFFIN                                    IN THE DISTRICT COURT

    Plaintiff,

v.                                                 101ˢᵗ JUDICIAL DISTRICT


AMERICAN ZURICH INSURANCE

COMPANY

    Defendant.                                     DALLAS COUNTY, TEXAS

✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸✸

**AFFIDAVIT**

STATE OF TEXAS

COUNTY OF DALLAS


    **BEFORE ME,** the undersigned Notary Public, on this day personally appeared Trent S. Griffin, Sr., who being by me duly sworn on his oath deposed and said:

1.    I am Trent S. Griffin, Sr., the plaintif, a pro se litigant in the the above-styled and numbered cause.

2.    I make this affidavit in support of a motion for new trial.

3.    In preparing this cause for trial, I made the following investigation:

    a.    Reviewed and found case law to determine the plaintiff is entitled to a new trial.

    b.    The evidence submitted to the trial court is inadmissable,

1

171

therefore, judgment should be set aside and a new trial granted to the plaintiff.

      c.    The plaintiff submitted an affirmative pleading on its merits with evidence and the defendant did not establish conclusively all elements of its cause of action as a matter of law.

      d.    The plaintiff did not receive notice of hearing or submission date for summary judgment motion.

      e.    The plaintiff did not receive a motion for summary judgment from the defendant.

      f.    Expert witness in the above-styled case and cause number is not needed in a case that can be decided by a layperson's knowledge of a work injury.

      g.    Peer Review evidence does not correlate to the plaintiff's cervical injury. weight of the evidence doesn't suffice summary judgment evidence.

      h.    All state evidence is inadmissable in a trial de novo review of the plaintiff's work injury.

_Trent S. Griffin, Sr._

**SUBSCRIBED AND SWORN TO BEFORE ME** on 4th _____ day of September, to certify which witness my hand and official seal.

E.H.
2014

**NOTARY PUBLIC**

Printed Name: Edwin Hernandez

EDWIN ALLAN HERNANDEZ
Notary Public, State of Texas
My Commission Expires
February 08, 2017

Notary Number: 12929987-3

Commission Expires: 02/08/17

2

# CERTIFICATE OF SERVICE

I certify that a true copy of the above Motion for New Trial has this day been sent by certfied mail by depositing it enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the care and custody of the United States Postal Service to attorney Todd Richards, The Silvera Firm, 1015 Providence Towers East, 5001 Spring Valley Road, Dallas, Texas 75244, attorney of record for American Zurich Insurance Company at Corporation Service Company, 211 East 7th Street, # 620 Austin, Texas, Travis County, Texas.

SIGNED on September 5th, 2014.

Trent S. Griffin, Pro se

1

173

## CERTIFICATE OF SERVICE

I certify that a true copy of the above Motion for Appellant's Brief and Appellant's Brief has been sent by certfied mail by depositing it enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the care and custody of the United States Postal Service to attorney Todd Richards, The Silvera Firm, 1015 Providence Towers East, 5001 Spring Valley Road, Dallas, Texas 75244, attorney of record for American Zurich Insurance Company at Corporation Service Company, 211 East 7th Street, #620 Austin, Texas, Travis County, Texas.

SIGNED on March 30, 2015.

CMRR: 7013 2250 0002 3632 3256

Trent S. Griffin, Pro se